## THE PEOPLE *v.* LOUISA NASH.

The city judge of the city of New York has no power to issue a writ of *habeas corpus;* under the statute of this State, the issuing of such writ is a ministerial and not a judicial act.

In a temporary commitment by a magistrate, for further examination, on a charge of larceny, it is not necessary to state whether it is grand or petit larceny, or what articles are alleged to have been stolen. (*Per* BARNARD, J.)

Form of proceedings to remove a decision by the city judge, on *habeas corpus,* into the Supreme Court for review, on a *certiorari* sued out in behalf of the People.

On *certiorari* to the city judge of the city of New York, the following return was made:

*To the Honorable the Justices of the Supreme Court of the State of New York for the First Judicial District:*

In compliance with the within writ of *certiorari* to me directed, I do hereby certify and return to your honorable court that the papers hereto annexed, and marked respectively " A," " B," " b," and " C," are copies of all proceedings had before me in the within entitled matter, the originals of which are on file in the office of the warden of the city prison of the city of New York.

JOHN H. McCUNN, *City Judge.*

Dated New York, April 27th, 1863.

NEW YORK SUPREME COURT.

In the matter of The People of the
State of New York.
*v.*
Louisa Nash.

*City and County of New York, ss:*

A. OAKEY HALL, district attorney of the city and county of New York, being duly sworn, deposeth and saith, that he

---

the great seal of the State, and that he be confined in the State prison, at hard labor, until such punishment of death shall be inflicted."

See, also, an interesting opinion by CAMPBELL, J., in *Done* v. *The People,* page 364 of this volume.

is informed and believes that, on the 17th day of February last, a writ of *habeas corpus* was tested from the Supreme Court, allowed by and returnable before the Hon. JOHN H. McCUNN, city judge of said city, a copy whereof is hereto annexed and marked "A." That to said writ a return was made, of which a copy is annexed "B." That on said return the matter was heard before said city judge, and on the 18th day of February last an order was made by said city judge, a copy whereof is hereto annexed marked "C;" and under said order, the said Louisa Nash, the party named therein, was discharged from custody, and a final adjudication was thereupon made by said city judge, and further saith not.

                                                A. OAKEY HALL.

Sworn to before me, this 27th }
    day of February, 1863. }

            JESSE O. VANDERPOEL, *Commissioner of Deeds.*

*The People of the State of New York, to the Honorable* JOHN H. McCUNN, *City Judge, of the city of New York,* GREETING:

Whereas, we have been informed by the official affidavit of the district attorney of the city and county of New York,

That a writ of *habeas corpus* was heretofore issued by you under your hand and seal, on behalf of one Louisa Nash, and directed to the warden of the city prison, in the city and county of New York, and the said writ of *habeas corpus* required the said warden to have the body of the said Louisa Nash before you, the said city judge, to be dealt with according to law. And whereas, pursuant to the requirements of the said writ, the body of the said Louisa Nash was brought before you, and whereas a return was made upon the said writ, and that thereupon you proceeded to hear and determine the said writ: and whereas such proceedings were had upon the said writ and said return that you, the said city judge did order, adjudge, and determine that the said Louisa Nash should be discharged from the custody and restraint of the warden of the city prison, and we, being willing to be certified of such proceedings as we have had before you, do command and strictly enjoin you to certify and return those proceedings,

The People *v.* Nash.

with all things, papers and schedules thereto appertaining, unto our justices of our Supreme Court, at the city hall, in city of New York, on the first Monday in May next, at the General Term of said court, under your hand, as fully and amply as the same remain before you, so that our said justices may further cause to be done thereupon what of right, and according to law, ought to be done; and have you then and there this writ.

*Witness* — JOSIAH SUTHERLAND, one of the justices of our [L. S.] said court, at the city hall, in the city of New York, this 27th day of February, A. D. 1863.

A. OAKEY HALL, *District Attorney.*

By the Court,

H. W. GENET, *Clerk.*

[INDORSED.]

I allow the within writ — New York, February 27, 1863.

GEORGE G. BARNARD, *Justice.*

" A."

WRIT OF HABEAS CORPUS.

*The People of the State of New York, to Charles Sutton, Esq.,* [L. S.] *warden of the City Prison of the city of New York,* GREETING:

We command you that you have the body of Louisa Nash, by you imprisoned and detained, as it is said, together with the time and cause of such imprisonment and detention, by whatever name she shall be called or charged, before Hon. JOHN H. McCUNN, city judge of the city of New York, at his office, No. 29 Wall street, in said city, forthwith on receipt of this writ, to do and receive what shall then and there be considered concerning him; and have you then and there this writ.

Witness, GEORGE G. BARNARD, Justice of the Supreme Court of New York, the 17th day of February, one thousand eight hundred and sixty-three.

H. W. GENET, *Clerk.*

CHAS. S. SPENCER, *Attorney.*

---

The People *v.* Nash.

---

[INDORSED.]

*In re* Louisa Nash. — Writ of Habeas Corpus. — Chas. S. Spencer, attorney.

Allowed, this 17th day of February, 1863.

JOHN H. McCUNN, *City Judge.*

## "C."

The within named, Louisa Nash, is hereby discharged, the commitment being illegal, it not specifying the crime for which she was committed, whether it is petit or grand larceny, or what articles it is alleged she has stolen. The commitment is clearly defective for these reasons. Mr. Blunt, assistant district attorney, appearing for the People; and admission of notice filed by Mr. Garvin, assistant district attorney.

New York, February 18, 1863.

JOHN H. McCUNN, *City Judge.*

## "B."

### COMMITMENT. — TEMPORARY.

*City and County of New York, ss:*

To the policemen and constables of the said city, and every of them; and to the keeper of the City Prison of the said city.

These are, in the name of the People of the State of New York, to command you, the said policemen and constables, and every of you, to convey to the said prison, the body of Louisa Nash, and deliver her to the keeper thereof; and you, the said keeper, are hereby commanded to receive into your custody, in the said prison, the body of the said Louisa, who stands charged before me, on the oath of Mary Murphy, with the offense of committing larceny, as a pickpocket, from the person of said Mary Murphy. And that you safely keep the said Louisa Nash in your custody, in the said prison, until the above said charge be investigated and determined by me, according to the statutes, in the case of arrest and examination of offenders, made and provided.

The People *v.* Nash.

Given under my hand and seal, in the said city, this thirteenth day of February, 1863.

MICHAEL CONNOLLY, [L. s.]
*Police Justice.*

On discharging the prisoner, the following opinion was delivered by McCunn, city judge:

The commitment charges the prisoner, "on the oath of Mary Murphy, with the offense of committing larceny, as a pickpocket, from the person of said Mary Murphy," but does not allege what was taken from the person of Mary by the accused, nor the time, place or any circumstance to show that the offense had been committed.

It is necessary to set forth the particular species of crime alleged against the accused with convenient certainty. And if it is an offense which is created by statute, it has been held that the terms of the statute should be pursued in describing it; and for this reason, that by using other words than those which the legislature has used, it may happen that the offense will not be sufficiently described. This was held in *Rex* v. *Remnant* (5 *Term R.*, 169; 2 *Leach R.*, 583), and is regarded as authority here.

And so a commitment was held to be insufficient where it alleged that the prisoner had, "with force and arms, made an assault on the prosecutor, with intent feloniously to steal and carry away from the person," &c., because the description did not charge him with any offense within the statute.

And so in this case. If the accused has committed any crime, it is probably that which is defined in chapter 508, section 33 of the act passed April 17, 1860: "Whenever any larceny shall be committed in said city and county, by stealing, taking and carrying away from the person of another, the offender may be punished as for grand larceny," &c. And the language of this section should have been used, that we could have arrived at a certainty as to whether this was or was not the crime committed, as the other section of the act refers to where the attempt is made to steal as a pickpocket, &c.

The commitment should also show whether the accused is

charged with a felony or a misdemeanor. If it be for a felony, it must contain the special nature of the felony. (2 *Wils. R.*, 158, 159 ; 2 *Hale R.*, 122.) The crime should be specifically set forth for another reason, that if the party is brought before the court upon a *habeas corpus*, and no specific crime is alleged, or is so loosely set forth that the court cannot judge whether there is any reasonable ground for imprisonment, the party will be discharged. (2 *Hawk. P. C.*, ch. 16, § 16; 1 *Chit. Cr. L.*, 111.)

It appears to me, that upon these proceedings, which are brought in compliance of article 2, page 883, 3 Revised Statutes, 5th edition, on *habeas corpus*, that I am bound, under this commitment, to discharge the prisoner from custody, though I am aware that it has been held in 5 *Cow. R.*, 39, and in *East R.*, 157, that if the commitment be defective, the Supreme Court will discharge the prisoner *pro forma*, and remand him upon a special rule; yet I am convinced that this is a mere matter of discretion, and the court will look into all the facts of the case ; and no person should be unlawfully deprived of liberty through the carelessness, ignorance or design of committing magistrates. For these reasons the prisoner must be discharged in this case, and an order entered accordingly.

*A. Oakey Hall* (District Attorney), for the People.

I. The writ should be quashed for want of jurisdiction.

1. The city judge at Chambers has no power to allow a writ of *habeas corpus*.

*a.* It is true the law of his official creation confers upon him all the *judicial* powers vested by law in the recorder. (*Laws of* 1850, ch. 205; *and* 1 *R. S.*, 5th ed., 397.)

*b.* The recorder exercised the duties of a *habeas corpus* commissioner, because, 1st (by 2 *R. S.*, *original paging*, 564, *and* § 37 *of the habeas corpus provisions*), *application* for the writ could be made to any officer authorized to perform the duties of a justice of the Supreme Court at Chambers; and 2d (*by* 2 *R. S.*, *original paging*, 281, § 35 *of General Provisions concerning certain judicial officers*), every recorder of a

The People *v.* Nash.

city was authorized, "by virtue of his office, to be a Supreme Court commissioner;" and 3d, a Supreme Court commissioner was given the duties of a Supreme Court justice at Chambers. (*Id.*, § 20.)

After July, 1847, the office of Supreme Court commissioner was abolished by the Constitution, art. 14, § 8.

The power, as a *habeas corpus* commissioner, of responding to the application for the writ, probably survived to the recorder. Or, in the language in *Renard* v. *Hargous* (2 *Kern. R.*, 263), "the power was *continued*." But no analogy can connect the reasoning in the last named case, with an argument for the power claimed by the city judge, because, in the act reviewed by the court in *Renard* v. *Hargous*, the words, "*perform the same duties*," are additional to these, viz., "possess the same powers."

Moreover, in the statute affecting the case at bar, the noun " powers " is limited by the adjective "*judicial*." (*See this topic, examined in the report,* "*In re Powers of County Judges*." 3 *How. Pr. R., p.* 32.)

*c.* But the issuing of a writ of *habeas corpus* by an officer at Chambers is never a judicial act; and if it were sometimes one, nevertheless, the phrase *judicial powers*, in the act of 1850, does not include such issue by the city judge.

1. The issue of a writ of *habeas corpus* by a judge at Chambers is not a judicial, but a ministerial *act*. (*Per* KENT, *Yates* v. *Lansing*, 5 *Johns. R.*, 282.)

" The writ *cannot be denied* where the granting of it is made a matter of imperative duty by the statute." (*Hurd on Habeas Corpus*, 225.)

KENT, in his Commentaries, draws the same distinction between act ministerial, as of *Chambers*, and act judicial, as of *banco*, consequent upon the extension by the Revised Statutes of the penal provision from *Chambers'* refusal which previously existed, to a *court* refusal. (1 *Kent*, 634; *and Hurd, p.* 226.)

2. The phrase "judicial powers," in the act of 1850, related to the powers of the recorder as judge of General or Special Sessions, and as a magistrate *quoad* justice of the peace.

*Bouvier* defines "judicial power" as "authority vested in the *judges.*

A judge is an officer of a court during court hours.

The *habeas corpus* statute uses both of these words, viz., judge and *officer.*

When the recorder allows a writ, he allows it as an *officer,* and not as a judge.

In the familiar case of *Barry* v. *Mercein* (8 *Paige*, 55), the chancellor says: "It is not material to inquire whether the chancellor, in allowing the writ of *habeas corpus*, acts *as a mere commissioner* under the statute, or as a court proceeding, etc., etc.," thus illustrating the distinction between officer and judge.

Section 102 of the *habeas corpus* provisions draws distinction between judge, commissioner, and officer.

See, also, section 4 of article 4 of chapter 315, Laws of 1844, respecting bail on *habeas corpus* in New York city.

It may be argued that the fourth section of the act of 1850 negatives the idea that the powers of the city judge are limited merely to the duties of the recorder as a *judge* of courts, because that section provides office accommodations for his attendance at all reasonable hours for the transaction of *business*, except when engaged in holding court.

That argument I answer thus: If the issuing of a writ of *habeas corpus* was the only possible business which the city judge could transact out of court, then the argument now met might, by implication, arise. But the city judge, as *judge*, must, concurrently with the recorder, have chambers at which to hear complaints as examining magistrate; to entertain applications for stays of proceedings on bills of exceptions; to settle bills of exceptions on hearing; to settle interrogatories, etc., etc., etc.

And it was for the purpose of transacting the above species of business that he required Chambers.

II. If the city judge had jurisdiction under the writ, he erred in holding the commitment defective.

1. The commitment showed that an examination was pending on charge of statutory crime, entitled larceny from the

The People *v.* Nash.

person, and "stated with reasonable certainty." (*Bac. Abr., tit. Commitment E.*)

2. The paper was what is best known in criminal law as a *remand*, as distinguished from a *mittimus.* (1 *Archb. Cr. Pl.,* 36–41, *Waterman's ed.*)

3. The city judge omits to draw a distinction between a remand and a final commitment or mittimus, and he appears to reason on defects, as if the process was a record of *conviction.*

A remand is not a statutory, but a common law process. (*Archb., supra.*)

And a *verbal* remand for three days after warrant issued, has been held good. (*Ib.*)

4. The recital of offense was as strong as that held to be good in a *warrant* in *Potter's Case* (*note to McLeod's Case*, 1 *Hill,* 399, *middle of page, and p.* 401, *bottom of page*), or, as in the cases collected in *Hurd on Habeas Corpus,* 376–383.

5. Will the court further examine the opinion by the light of the following cases:

"It is not necessary to allege the value of the property (*i. e.*, in the warrant); the only effect of omitting to do so is, that the offense would be deemed petit larceny, and therefore bailable before any magistrate of the county." (*Payne* v. *Barnes,* 5 *Barb. R.,* 465.)

"The warrant, though very limited, is sufficient, if it recite the subject of the section." (*Sleight* v. *Ogle,* 4 *E. D. Smith,* 445.)

In *ex parte Smith* (5 *Cow. R.*), the following remand was held sufficient by the Supreme Court, after arguments by Van Ness Yates and Attorney-General Talcott:

"POLICE OFFICE, CITY OF ALBANY.

"The gaoler will receive and safely keep for further examination, George W. Smith, who is charged with having been engaged in, or accessory to, a robbery of the U. S. mail.

"J. O. COLE, *Justice of the Peace.*"

During the attorney-general's argument, he said (*p.* 275) "This commitment is merely for further examination. *No*

*formality is necessary in such a commitment.* It may be by a verbal warrant; no crime need be specified. The order in question is in the usual form, and is sanctioned by authorities," &c.

III. It was the duty of the city-judge, although the commitment was irregular, to have bailed, and not have discharged. (*See* 58, *Habeas Corpus Provisions.*)

*C. S. Spencer*, for the prisoner.

I. The commitment is defective. It should have stated that some article, the subject of larceny, was taken. It should have stated some *value.* It should have stated *when*, to show that it was within the statute of limitation for the offense, and *where*, to show that the court had jurisdiction. This is not stating the cause of commitment "with reasonable certainty." (*Rex* v. *Remnant*, 5 *Term R.*, 169; 2 *Leach*, 583; 2 *Wils.*, 158, 159; 2 *Hale*, 122; 2 *Hawk. P. C.*, ch. 16, § 16; 1 *Chit. Crim. Law*, 111.)

In the administration of criminal law, the forms of justice ought to be rigidly complied with, and no party charged with an offense should be held by virtue of a commitment, that does not *contain one of the requirements of the law.*

II. It was clearly a matter of discretion whether the judge would discharge the prisoner *pro forma*, and then remand or take bail. Strictly it was his duty, in the language of the statute (3 *R. S.*, 5*th ed.*, *p*, 895, § 103), "*to determine whether the party is lawfully committed.*" He did determine the question upon inspection of the commitment, which was all there was before him.

The prisoner had been in prison from the 13th to the 17th day of February, 1863, before the writ was issued upon a temporary commitment. This was an unreasonable detention. The prisoner was entitled to a speedy examination. It was the duty of the judge before whom the prisoner was brought, to take into consideration this fact exercising his discretion. The statute points out the duty of the officer before whom the prisoner is brought; its language is:

"If no legal cause be shown for such imprisonment or

The People *v.* Nash.

restraint, a further continuation thereof, such court or officers shall discharge such party from the custody or restraint under which he is held."

The cases in which the court or officer shall *remand*, are also pointed out by the statute, and are not left to *arbitrary discretion.* They are as follows:

"It shall be the duty of the court or officer forthwith to remand such party, if it shall appear that he is detained in custody, either,

"1. By virtue of process issued by any court or judge of the United States Courts, in a case where such court or judge has exclusive jurisdiction; or,

"2. By virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree; or,

"3. For any contempt especially and plainly charged in the commitment, by some court, officer or body having authority to commit for the contempt so charged; and,

"4. That the time during which such party may be legally detained has not expired." (*5th ed. R. S., vol. 3, p.* 887, §§ 54, 55.)

Certainly the officer could not have *remanded where* no legal cause for detention appeared on the face of the commitment. It was his duty, according to the letter and spirit of the statute to discharge.

The cases cited by the prosecution do not apply to the facts as presented in this case. The case of *Payne* v. *Barnes* (5 *Barb. R.*, 465), does not decide the question here. The court will see, by examining the case, that the *time*, the *place* and the *amount* were stated. In the commitment under consideration, none of these requisites are stated.

In the case of *Sleight* v. *Ogle* (4 *E. D. Smith R.*), the question arose, as in the last case, in a civil suit, and the question here presented was not in issue; for in the case of *Sleight* v. *Ogle*, it appears that a complaint in due form was made before the magistrate who issued the warrant, and the judge who delivered the opinion says: "This was, *prima facie*, sufficient to authorize the arrest."

The case in 5 *Cow. R.* (*ex parte Smith*), is not applicable to the question here. He was a fugitive from justice; the offense one against the laws of the United States. The counsel for the prisoner *did not raise the question as to the validity of the commitment*, neither did the *court allude in any manner to that question*.

The inferences to be drawn from the case are in favor of the point claimed by the prisoner here.

The city judge has power to grant writs of *habeas corpus*.

All judicial powers vested by law in the recorder of the city of New York, are hereby conferred upon such city judge; and said city judge shall, concurrently with said recorder, perform and discharge all judicial duties imposed upon such recorder. (*Laws* 1850, *ch.* 205, § 3, and 1 *R. S.*, 5*th ed.*, *p.* 397, § 64.)

Every county judge, within the county in which he shall have been elected, shall have power, and it shall be his duty, to perform all such duties, and to *do all such acts*, when not holding a County Court, as might have been done or performed by the laws in force on the 12th of May, 1847, by the judges of the *Court of Common Pleas*, or by any one or more of them, at Chambers or otherwise, when not holding court, or by any other judge being of the degree of counselor of the Supreme Court, and acting as a Supreme Court commissioner. (3 *R. S.*, 5*th ed.*, *p.* 306, § 32.)

The judges of the Court of Common Pleas for the city and county of New York, elected pursuant to chapter 255 of the Laws of 1847, and the mayor, *recorder* and aldermen of the said city *shall be judges* of the Court of Common Pleas of the said city and county. (3 *R. S.*, 5*th ed.*, 307, § 41.)

Common Pleas may be held by *recorder* alone. (*Ib.*, § 42.)

The judges of the Court of Common Pleas are authorized to perform the duties of a justice of the Supreme Court at Chambers. (*Laws* 1847, *p.* 281, § 7; 1 *Park. Cr. R.*, 138.)

The same power is given to the judges of the Court of Common Pleas, in and for the city and county of New York at Chambers, as is given by any law of this State to the justices

of the Superior Court of said city (3 *R. S.*, 309, *5th ed.*), and a judge of the Superior Court at Chambers, sitting as a Supreme Court commissioner, has power to issue a writ of *habeas corpus.* (1 *Duer R.*, 709; 2 *R. S.*, 281, § 33.)

Recorders of cities and judges of the county courts, being of the degree of counselor-at-law, may perform the duties of a justice of the Supreme Court at Chambers. (2 *R. S.*, 281, § 32; *Opinion of Justice* WILLARD, 3 *How., Pr. R.*, 32; *Op. of Jus.* HARRIS, 3 *Id.*, 40; *Op. of Jus.* BARCULO, 3 *Id.*, 172.)

In which latter case Justice BARCULO held:

" I concur fully with those of my brethren who hold that county judges are clothed with the power of performing certain duties of a justice of this court at Chambers. This power is given to those officers by the new judiciary act, if it is possible for legislative enactment to do so, &c., &c."

The city judge of the city of New York has the powers of a former Supreme Court commissioner. (*Avery's Case*, 6 *Abb. R.*, 146.)

The issue of a writ of *habeas corpus* by a judge at Chambers is not a mere ministerial act. It involves the exercise of judicial discretion.

The writ of *habeas corpus* is a prerogative writ, not ministerially issuable, *i. e.*, not issuable of course; and yet it is a writ of right on a proper foundation, being made out by proof. (3 *Hill R.*, 649, *Note pl.* 2; *see* 16 *Barb. R.*, 362.)

BARNARD J. There are two questions presented in this case. One, whether the city judge has power to issue the writ of *habeas corpus*, and the other whether, if he has that power, he has made a correct decision in discharging the prisoner.

The power depends upon the construction to be given to the words "judicial powers," contained in the act of 1850, creating the office of city judge. The portion of the act which confers on the city judge his powers and defines his duties is as follows: " All *judicial* powers vested by law in the recorder of the city of New York, are hereby conferred on such city judge, and said city judge shall, concurrently with

said recorder, perform and discharge all judicial duties imposed on such recorder."

Now, the only power which the recorder has to issue a *habeas corpus* is derived from the statute making him a Supreme Court commissioner. (2 *R. S.*, *p.* 281, § 35.) By 2 Revised Statutes (*p.* 281, § 20), a Supreme Court commissioner had the duties of a justice of the Supreme Court at Chambers, under certain limitations, which do not affect this question. By the *habeas corpus* provisions, application for the writ might be made to any officer authorized to perform the duties of a justice of the Supreme Court at Chambers. (2 *R. S.*, *p.* 564, § 37.) Shortly, thus: Any officer authorized to perform the duties of a justice of the Supreme Court at Chambers might issue the writ; a Supreme Court commissioner was authorized to perform such duties; the recorder was a Supreme Court commissioner, and, by virtue of being such, might issue the writ. It follows that the power and authority of the recorder is precisely that of a Supreme Court judge at Chambers.

It will now be considered whether there is any distinction between the term "Chambers," and the term "vacation." They are, in fact, convertible terms. Everything that can be done at Chambers can be done in vacation; and, on the other hand, everything that can be done in vacation can be done at Chambers. There can be no distinction made where the powers and duties are identically the same. The power of the recorder to issue a *habeas corpus* is, consequently, the same as that of a Supreme Court judge in vacation.

In the year 1810, Chief Justice KENT, in the case of *Yates* v. *Lansing* (5 *Johns. R.*, 282), enunciated the doctrine that the allowance of the writ of *habeas corpus* in vacation is not a judicial act, but a ministerial one. If this doctrine is sound, it disposes of the case. Chief Justice KENT, at the time he enunciated the doctrine, had in view that one of the *habeas corpus* provisions which imposed a penalty for refusing to issue the writ; and he appears to base the doctrine on the principle that when the statute imposes the performance of an act in favor of a party upon a petition being presented drawn in conform-

ity with specific directions contained in the statute itself, and prescribes a penalty in favor of the party for a refusal to perform the act, then the act to be done is ministerial and not judicial. It is the very nature of a judicial power that those in whom it may be vested shall decide and act according to their honest and fair judgment without being liable to suitors or private parties for any error in their judgment; thus giving them free and uncontrolled exercise of judgment. If, consequently, in the exercise of a judicial power, they refuse to perform an act, or commit any error in its performance, they are completely protected from being called to account by a suitor or private party. If the penalty given by the *habeas corpus* act was only to attach in cases where the writ was refused when it was legally applied for in the judgment of the officer to whom the application should be made, then the power to issue the writ might be a judicial one; since then there would be no restriction on the exercise of the officer's judgment. But the provision would not then answer the end intended, as there could not, in any case, be a recovery of the penalty. The penalty, however, is imposed for refusing to grant the writ when legally applied for. If, then, the officer should make a mistake as to the writ being legally applied for, he would be liable to the penalty, even though the mistake were honestly made. The statute, in order to protect the officer, has clearly defined the prerequisites in order to obtain the writ. It prescribes a petition, and defines with particularity its contents, and prescribes what persons are prohibited from prosecuting the writ, and then declares that the writ shall be granted unless it appears from the petition or the documents accompanying it that the party applying is among those prohibited from prosecuting.

The provisions of the statute are so framed as to render it scarcely within the bounds of possibility that the officer could make any mistake as to whether the prerequisites had been complied with; and then to make him liable, in all cases, to the penalty for a refusal to issue the writ, unless he could, when sued, make it appear, to the satisfaction of the court before

which the case should be tried, that the writ had not been legally applied for. The provisions of the act thus deprive the officer of that free exercise of judgment which is an essential to a judicial power. The power in question must necessarily be ministerial. True, there is a species of judgment required in seeing whether the petition contains the matters prescribed by the statute. But it is the same species of judgment which almost every ministerial power calls for. It is the same kind of judgment which the register of deeds is required to exercise in ascertaining whether an acknowledgment is in conformity with the statute. It will scarcely be contended that the duty imposed on the register, of seeing that every conveyance has been duly proved or acknowledged, vests in him a judicial power.

But this species of judgment is not that free and untrammeled exercise of judgment which appertains and is essential to a judicial power. Nor does the fact that judges and courts are empowered to issue the writ necessarily make it a judicial power; for there can be no doubt that the performance of an act, clearly ministerial in itself, may be imposed on a judge. The fact that a judge is selected as the minister to perform a ministerial act cannot change the nature of the act: that will remain the same as if a coroner or constable had been selected. There is no reason for dissenting from the principle laid down by Chief Justice KENT.

Having thus come to the conclusion that the power of the recorder to issue a *habeas corpus* is ministerial, it follows that it does not pass to the city judge under the term "judicial powers."

Upon the other question, the commitment is in the form sanctioned by authority, and is, on principle, amply sufficient.

The discharge must be vacated, and the prisoner remanded on the temporary commitment.

, CLERKE, J. The act of 1850 (*Laws of* 1850, *p.* 388, § 3), creating the office of city judge in the city and county of New York, confers upon this officer all judicial powers vested by

The People *v.* Nash.

law in the recorder of the city of New York; "and," it proceeds to say, "the said city judge shall, concurrently with said recorder, perform and discharge all *judicial* duties imposed upon said recorder." I will not now inquire whether this act confers upon the city judge any other judicial powers than those belonging to the Court of General and Special Sessions, such as the power to hold a Court of Common Pleas, &c. But, of course, there can be no question that the city judge shares no other powers with the recorder than those which are, in the strictest sense of the term, judicial.

Is the power to issue a writ of *habeas corpus* to inquire into the cause of a person's commitment, detention or restraint of liberty, a judicial power? Undoubtedly, it is a power which is intimately connected with the administration of justice, and so are all the various powers possessed and exercised by the numerous officers of every court of justice. The issuing of many writs and processes is vested in clerks and prothonotaries; and the power is purely ministerial. No power is judicial that does not imply discretion—the right to grant or refuse, according to what the officer deems right or just and in conformity to the laws of the land. But the writ of *habeas corpus*, whether applied for in or out of court, has now become a writ of right; and, "if any court or officer, authorized to grant writs of *habeas corpus*, shall refuse to grant such writ, when legally applied for, every member of such court who shall have assented to such refusal, and every officer, shall severally forfeit to the party aggrieved one thousand dollars." (3 *R. S.,* 5*th ed., p.* 885, § 46.) As the law stood before the revision of 1830, when the application was made to the court, the members were not liable to this penalty: it attached only to those judges who refused to grant the writ in "the vacation time." (1 *R. L., p.* 355, § 4.) Consequently, in *Yates* v. *Lansing* (5 *Johns. R.,* 282), the court decided that, when the application was made to the court, they acted judicially, and were not liable to the penalty; but when it was made to a judge in vacation, or out of court, he acted ministerially, and was liable. KENT, Ch. J., says: "The penalty to which the chancellor and judges are

liable, is mentioned in the 4th section of the act; and that is given against them by name, and only for their refusal, in the vacation time, to allow a writ of *habeas corpus*, when duly applied for. The chancellor and judges may refuse such a writ, at their discretion, if applied for in term time, and the penalty will not attach. It is only when they refuse, in a *mere ministerial capacity*, to allow a writ, that they are made responsible. *The allowance of a writ in vacation is not a judicial act."* So that, if the penalty was not extended to the court by the revisers of 1830, still the act of the city judge in issuing a writ of *habeas corpus* would not be a judicial act: it would be purely ministerial. At no time since the act of 1813 could a judge out of court refuse the writ; and, therefore, in allowing it, he acted in a mere ministerial capacity.

The act of 1850, creating the office of city judge, having conferred on him only the judicial powers vested in the recorder, he cannot exercise powers that are not judicial, and which are purely ministerial. In doing so, he attempts to stretch his authority beyond the limits which the statute prescribes.

The proceedings before the city judge should be set aside, and the relator, Louisa Nash, should be remanded on the temporary commitment.

Discharge vacated, and prisoner remanded.

---

SUPREME COURT. New York General Term, May, 1863, *Sutherland, Clerke* and *Barnard,* Justices.