## SUPREME COURT.

### In the matter of Louisa Nash.

The *city judge* in and for the city and county of New York has no authority or power to issue a *writ of habeas corpus.*

*New York General Term, August,* 1863.

Sutherland, Clerke and Barnard, *Justices.*

The point presented by this case was, whether Judge McCunn, as city judge, had the right to issue the writ of *habeas corpus.* The relator was arrested and committed by Judge McCunn, on the charge of larceny. She was discharged by Judge McCunn, and on appeal to the supreme court, at general term, the right of the city judge to issue the writ of *habeas corpus* was denied.

Barnard, Justice. There are two questions presented in this case : one, whether the city judge has power to issue the writ of *habeas corpus ;* and the other whether, if he has that power, he has made a correct decision in discharging the prisoner.

The power depends on the construction to be given to the words "judicial powers" contained in the act of 1850, creating the office of city judge. The portion of the act which confers on the city judge his powers, and defines his duties, is as follows : "All judicial powers vested by law in the recorder of the city of New York are hereby conferred on such city judge ; and said city judge shall concurrently with said recorder perform and discharge all judicial duties imposed on such recorder." Now, the only power which the recorder has to issue a *habeas* is derived from the statute, making him a supreme court commissioner. (2 *R. S., p.* 281, § 35.) By 2d R. S., p. 281, § 20, a supreme court commissioner had the duties of a justice of the supreme court at chambers under

certain limitations which do not affect this question. By the *habeas corpus* provisions application for the writ might be made to any officer authorized to perform the duties of a justice of the supreme court at chambers. (2 *R. S.*, *p.* 564, § 37.) Shortly thus: any officer authorized to perform the duties of a justice of the supreme court at chambers might issue the writ; a supreme court commissioner was authorized to perform such duties; the recorder was a supreme court commissioner, and by virtue of being such might issue the writ. It follows that the power and authority of the recorder is precisely that of a supreme court judge at chambers. It will now be considered whether there is any distinction betwen the term " chambers" and the term " vacation." They are, in fact, convertible terms. Everything that can be done at chambers can be done in vacation; and, on the other hand, everything that can be done in vacation can be done at chambers. There can be no distinction made where the powers and duties are identically the same. The power of the recorder to issue a *habeas* is consequently the same as that of a supreme court judge in vacation. In the year 1810, Chief Justice KENT, in the case of *Yates* agt. *Lansing*, (5 *John. R.*, 282,) enunciated the doctrine that the allowance of the writ of *habeas corpus* in vacation is not a judicial act, but a ministerial one. If this doctrine is sound, it disposes of the case. Chief Justice KENT, at the time he enunciated the doctrine, had in view that one of the *habeas corpus* provisions which imposed a penalty for refusing to issue the writ; and he appears to base the doctrine on the principle that when a statute imposes the performance of an act in favor of a party upon a petition being presented drawn in conformity with specific directions contained in the statute itself, and prescribes a penalty in favor of the party for a refusal to perform the act, then the act to be done is ministerial and not judicial. It is the very nature of a judi-

cial power that those in whom it may be vested shall decide and act according to their honest and fair judgment, without being liable to suitors or private parties for any error in their judgment; thus giving them free and uncontrolled exercise of judgment. If, consequently, in the exercise of a judicial power, they refuse to perform an act or commit any error in its performance, they are completely protected from being called to account by a suitor or private party. If the penalty given by the *habeas corpus* act was only to attach in cases where the writ was refused when it was legally applied for in the judgment of the officer to whom the application should be made, then the power to issue the writ might be a judicial one; since then there would be no restriction on the exercise of the officer's judgment. But the provision would not then answer the end intended, as there could not, in any case, be a recovery of the penalty. The penalty, however, is imposed for refusing to grant the writ when legally applied for.

If, then, the officer should make a mistake as to the writ being legally applied for, he would be liable to the penalty, even though the mistake were honestly made. The statute, in order to protect the officer, has clearly defined the prerequisites in order to obtain the writ. It prescribes a petition and defines with particularity its contents, and prescribes what persons are prohibited from prosecuting the writ, and then declares that the writ shall be granted, unless it appears from the petition or the documents accompanying it, that the party applying is among those prohibited from prosecuting.

The provisions of the statute are so framed as to render it scarcely within the bounds of possibility that the officer could make any mistake as to whether the prerequisites had been complied with, and then to make him liable in all cases to the penalty for a refusal to issue the writ, unless he could, when sued, make it appear to the satis-

In the matter of Nash.

faction of the court before which the case should be tried, that the writ had not been legally applied for. The provisions of the act thus deprive the officer of that free exercise of judgment which is an essential to a judicial power. The power in question must necessarily be ministerial. True, there is a species of judgment required in seeing whether the petition contains the matters prescribed by the statute. But it is the same species of judgment which almost every ministerial power calls for. It is the same kind of judgment which the register of deeds is required to exercise in ascertaining whether an acknowledgment is in conformity with the statute. It will scarcely be contended that the duty imposed on the register, of seeing that every conveyance has been duly proved or acknowledged, vests in him a judicial power.

But this species of judgment is not that free and untrammeled exercise of judgment which appertains and is essential to a judicial power. Nor does the fact that judges and courts are empowered to issue the writ necessarily make it a judicial power ; for there can be no doubt that the performance of an act clearly ministerial in itself may be imposed on a judge. The fact that a judge is selected as the minister to perform a ministerial act cannot change the nature of the act ; that will remain the same as if a coroner or constable had been selected. There is no reason for dissenting from the principle laid down by Chief Justice KENT.

Having thus come to the conclusion that the power of the recorder to issue a *habeas* is ministerial, it follows that it does not pass to the city judge under the term "judicial powers."

Upon the other question, the commitment is in the form sanctioned by authority, and is on principle amply sufficient.

The discharge must be vacated and the relator remanded on the temporary commitment.

CLERKE, J.    The act of 1850 (*Laws of* 1850, *p.* 388, § 3) creating the office of city judge in the city and county of New York, confers upon this officer all judicial powers vested by law in the recorder of the city of New York, " and," it proceeds to say, " the said city judge shall concurrently with said recorder perform and discharge all judicial duties imposed upon said recorder."   I will not now inquire whether this act confers upon the city judge any other judicial powers than those belonging to the court of general and special sessions, such as the power to hold a court of common pleas, &c.    But, of course, there can be no question that the city judge shares no other powers with the recorder than those which are in the strictest sense of the term judicial.

Is the power to issue a writ of *habeas corpus*, to inquire into the cause of a person's commitment, detention or restraint of liberty, a judicial power ?   Undoubtedly it is a power which is intimately connected with the administration of justice ; and so are all the various powers possessed and exercised by the numerous officers of every court of justice.   The issuing of many writs and processes is vested in clerks and prothonotaries, and the power is purely ministerial.   No power is judicial that does not imply discretion—the right to grant or refuse, according to what the officer deems right or just, and in conformity with the laws of the land.   But the writ of *habeas corpus*, whether applied for in or out of court, has now become a writ of right ; and " if any court or officer, authorized to grant writs of *habeas corpus*, shall refuse to grant such writ, when legally applied for, every member of such court who shall have assented to such refusal, and every officer, shall severally forfeit to the party aggrieved one thousand dollars."   (3 *R. S.*, 5*th ed.*, 885, § 46.)   As the law stood before the revision of 1830, when the application was made to the court, the members were not liable to this penalty ; it attached only to those judges who refused to

In the matter of Nash.

grant the writ in "the vacation time." (1 *R. L.*, 355, §4.) Consequently, in *Yates* agt. *Lansing*, (5 *J. R.*, 282,) the court decided that when the application was made to the court they acted judicially, and were not liable to the penalty; but when it was made to a judge in vacation, or out of court, he acted ministerially and was liable. KENT, Ch. J., says: "The penalty to which the chancellor and judges are liable is mentioned in the 4th section of the act, and that is given against them by name, and only for their refusal in the vacation time to allow a writ of *habeas corpus* when duly applied for. The chancellor and judges may refuse such a writ at their discretion, if applied for in term time, and the penalty will not attach. It is only when they refuse in a ministerial capacity to allow a writ, that they are made responsible. The allowance of a writ in vacation is not a judicial act. So that, if the penalty was not extended to the court by the revisors of 1830, still the act of the city judge in issuing a writ of *habeas corpus* would not be a judicial act; it would be purely ministerial. At no time since the act of 1813 could a judge out of court refuse the writ; and therefore, in allowing it, he acted in a mere ministerial capacity.

The act of 1850, creating the office of city judge, having conferred on him only the judicial powers vested in the recorder, he cannot exercise powers that are not judicial, and which are purely ministerial. In doing so, he attempts to stretch his authority beyond the limits which the statute prescribes.

The proceedings before the city judge should be set aside, and the relator, Louisa Nash, should be remanded on the temporary commitment.

NOTE.—The Revised Statutes require, on an application for a writ of *habeas corpus*, that " application for such writ shall be made by petition, signed either by the party for whose relief it is intended, or by some person in his behalf, as follows: 1st. To the supreme court during its sitting; or, 2d. During any term or vacation of the supreme court, to any one of the justices of the supreme court, *or any officer who may be authorized to perform the duties of a justice of the supreme court at*

In the matter of Nash.

*chambers,* being or residing within the county where the prisoner is detained; or if there be no such officer within such county, or if he be absent, or for any cause be incapable of acting, or have refused to grant such writ, then to some officer having such authority, residing in any adjoining county." (3 *R. S.,* 5th ed., *p.* 883.)

The principal question would seem to be, whether the city judge is a *supreme court commissioner ?* If that question is settled in the affirmative, it would appear that he has not only, as one of the proper officers designated by statute, the power and authority to issue the writ of *habeas corpus,* but is liable to the penalty of $1,000, provided by statute, for refusing to issue it when legally applied for.

It is stated in the above leading opinion, that " the only power which the *recorder* of the city of New York has to issue a *habeas,* is derived from the statute making him a supreme court commissioner." Again, the court say: " The power of the recorder to issue a *habeas* is consequently the same as that of a supreme court judge in vacation." It is conceded and settled, then, that the recorder is, by virtue of the statute, a supreme court commissioner, authorized to perform the duties of a justice of the supreme court at chambers or in vacation. Now, does not the statute of 1850, creating the office of city judge, also make that officer a supreme court commissioner, and give him authority to perform the duties of a justice of the supreme court at chambers, equally with the recorder ? The statute says: " All judicial powers vested by law in the recorder of the city of New York are hereby conferred on such city judge, and said city judge shall concurrently with said recorder perform and discharge all judicial duties imposed on such recorder." And among the judicial powers and duties imposed on the recorder by law, are those of supreme court commissioner. The office of a supreme court commissioner is a *judicial* office—not ministerial. Of course, the incumbent of that office is a *judicial officer.* The object and intent of the act of 1850 is undoubtedly to make the city judge co-equal with the recorder in power and authority as a judicial officer, and the language of the act is well expressed to carry out that object and intent. It is difficult to see what authority the city judge has to perform any duty under the act of 1850, which the recorder is bound to perform, (and he can perform no other,) if the duties of supreme court commissioner are excluded.

It is said, that because the act of issuing a writ of *habeas corpus* by a supreme court commissioner is a *ministerial* and not a judicial act, and as only judicial powers were conferred on the city judge, and that *this* ministerial power did not pass to the city judge under the term " judicial powers," therefore the city judge had no power to issue the writ. If what we have above been endeavoring to establish is true, to wit: that the city judge is a supreme court commissioner equally with the recorder, his power to issue the writ is coextensive with that of the recorder. Why has the recorder the power to perform this ministerial act? The power is not conferred upon him in terms. It must be because it is, as in all cases of the exercise of judicial power, an incident to the effectual carrying out of the judicial powers of a judicial officer.—REP.