By the Court.—Monell, J.
In this case an appeal from a judgment had been, argued before a general term of the court, composed of three of its justices. Subsequently, upon a concurrence of two of the justices, a decision was filed, and an order entered reversing the judgment.
A motion is now made to set aside the order, and for a re-argument of the appeal, founded on the fact, as stated In the certificate of one of the justices, to the effect that such decision wa.s rendered without consultation or conference with him, there not having been any meetings appointed or held by the thiee justices to consult and confer upon the decision.
It has long been a provision of law (2 Rev. Stat., 555, § 27), that whenever any power, authority, or duty is confided by law to three or more persons, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done, and such power, authority, or duty may be exercised and performed by a majority of such persons or officers upon a meeting of all the persons or officers so entrusted or empowered, unless special provision is otherwise made. This provision is found under the title of “ General Miscellaneous Provisions Concerning Suits and Proceedings in Civil Cases.”
The language of the statute, it would seem, is suf-J ficiently broad to comprehend all officers—judicial as well as ministerial. In respect to such persons or officers—as it was intended the statute should include— all of them must meet and confer, and the action of *236 a number less than the whole, although a majority, is void.
Before the statute, the rule was stated, to be that where several persons constitute a judicial body, a tribunal appointed by law to act in matters of public concern, in the decision of controversies and causes, they must all convene and act. Where so convened and acting, a majority may decide, notwithstanding the express dissent of the minority (Exp. Rogers, 7 Cow., 526). The rule, however, was confined to officers or persons clothed with authority to perform or discharge a public duty. In cases of private arbitration, and matters of a private nature, it was required that the whole body should be unanimous. The statute referred to merely enacts the rule thus laid down.
This statute has frequently been applied to quasi judicial officers, and it is uniformly held that all must be present to confer.
In Green v. Miller (6 Johns., 39), there was a parol submission to five arbitrators ; four only signed the award, and it was held all must concur.
That decision was before the statute (2 Rev. Stat., 542, § 7).
In Downing v. Rugar (21 Wend., 178), one overseer of the poor applied for a warrant, and it did not appear there were two overseers, although the statute required two to be elected. Co west, J., says: “The rule seems to be well established that in the exercise of a public as well as private authority, whether it be ministerial or judicial, all the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed.”
In Crooker v. Williams (21 Wend., 211) four out of fifteen commissioners to receive subscriptions to, and make distribution of, the capital stock of a railroad company, did not attend the meetings of the commissioners. The court held that the distribution of the stock was a judicial power, vested in all the commis *237 sioners, and that where a statute constitutes a board of commissioners, or other officers, to decide any matter, but makes no provision that a majority shall constitute a quorum, all must be present to hear and consult, hough a majority may then decide.
An apportionment of a school tax made by two trustees, the third not being consulted, was held to be void (Lee v. Parry, 4 Den., 125); and in Keeler v. Frost (22 Barb., 200), an assessment of a school tax made by two trustees, was carried to the third trustee, who signed it. Yet the court held it to be void, using this ¡.strong language : “It is expressly shown that Worden did not meet with the other two trustees when the assessment was made; nor was he notified of their meeting for that purpose. The fact, if admitted, that he signed the warrant, does not relieve the case in any respect. The statute and common law both require the apportionment to be made upon the joint consultation of all the trustees, and not that the warrant shall be signed by all.” The same interpretation of the statute is made in Horton v. Garrison (23 Barb., 176), with this qualification : that if all the officers are notified to meet, and any refuse or neglect to attend, it is the same as if they had attended and dissented from the majority. So, an order laying out a highway, signed by only two commissioners, was held to be void, it not appearing that the third commissioner met with them, or was notified, and failed to attend (Stewart v. Wallis, 30 Barb., 344).
In all the cases to which I have referred, the officers were merely quasi judicial officers. They were clothed vith certain discretionary powers, and could exercise ;ertain judicial'functions, but were not what are delominated judies, who have power to make decisions and determinations in causes and controversies between parties. Yet the principle of the rule of the common law, as well as of the statute, would seem to be appli *238 cable to the latter class. The reason which suggested the adoption of the rule and the enactment of the statute, applies with equal force to each class ; and parties have quite as much, and even more, interest in. having their controversies settled by the united wisdom of all the judges before whom their controversies are brought, as individuals have in matters appertaining to the administration of the affairs of towns or counties.
Nevertheless, I have not been able to satisfy myself that the statute referred to was designed to include strictly judicial officers, as distinguished from mere quasi judicial officers to whom certain functions and, powers are giv'en expressly and by name, by statute. The language of the statute referred to—“ whenever three or more persons or officers are authorized,” &c.,— •would seem to. imply that it was intended to confine its effect to persons or officers designated by statute, and who are required by statute to perform certain acts which, although sometimes of a semi-judicial character, •are chiefly ministerial.
To apply the statute to strictly judicial officers would inevitably lead to wide differences of opinion in determining the .meaning of the statute as to what would constitute a meeting of all the judges who had sat at the hearing of a cause.
• This view of the statute was taken in the case of People ex rel. Hawes v. Walker (23 Barb., 304), where a distinction is drawn between officers or persons upon whom a public authority is conferred, and the members of a court of justice. In that case three distinct bodies, —i. e., the supervisors of New York, the judges of the superior court, and of the court of common pleas,—were constituted by law a commission, with power to appoint a commissioner of jurors ; and it was held, in a decision made at special term, that, after *notice to all the members of such bodies, a majority of the whole number constituted a quorum, and could act; The learned justice says : “That where a public authority *239 is conferred on individuáis (not on a court) who are to act judicially, all must confer together.” . . . Fo reason, however, was assigned for excluding courts from the operation of the rule.*
*240 The case of Corning v. Slosson (16 N. Y., 294) contains a dictum, which should be constantly remembered by all judicial officers. An appeal had been heard by three justices of the supreme court. Subsequently, a *241 decision was rendered by a court composed of two of the justices who had heard the appeal, and another judge who did not hear the argument. The case turned upon the construction of section 2 of 2 Rev. *242 Stat., 215, prohibiting any judge from deciding or taking part in a decision of any question which shall have been argued in the court when he was not present and sitting therein as a judge. The court of appeals held *243 that the court was properly constituted ; that it would presume that the judges who heard the argument had agreed to the decision, and it was proper for the two who sat and who had heard the appeal to render the *244 decision, the other judge, who had not heard the appeal, taking no part in the decision, and sitting merely as one of the three necessary to constitute the court.
But the court uses this significant language: “It was the duty of the three judges who heard the argument to consult together in relation to the decision of the questions involved in the motion, in order that each might have the benefit of the views of his brethren to aid him in arriving at a proper conclusion, and doubtless such consultation was had ; it is to be presumed that they discharged their duty in that respect.”
The difference in the constitution of the general terms *245 of the supreme court and of this court, the former requiring three judges (Const., Art. VI., § 6), and two being sufficient in this court (Code, § 86), does not affect the question. If more than two judges sit, a concurrence of a majority is necessary to a valid decision; and the rule of the common law and of the statute, | which requires that all who sat at the hearing shall meet and confer, is alike applicable to a court composed of two as of a court of any greater number of judges.
It cannot, I think, be doubted that the practical ef-. feet of consultations and conferences in relation to questions which a court is called on to decide, is both useful to the court and beneficial to the parties. It must be within the experience of every member of the judiciary, who has occupied a seat for a few years upon the bench, that views have been shaken and opinions changed at consultation meetings. A fact which has been overlooked, or not appreciated, may change a theory or shed new and different light on the case. The investigations of one judge, more diligent than his associates, may discover a leading case or a new statute, the discussion of which may reverse opinions previously formed ; and generally, more enlarged and enlightened views are sure to be obtained and expressed.
In the doubt, however, which we entertain of the application of the statute to judges of courts, we are not prepared to hold that, for the reason assigned in the moving papers, the decision of the appeal by two of the justices who heard it, and which was made without consultation with their associates, should be regarded as irregular, or of no effect. But as the order entered upon such decision, which merely reverses the judgment, without ordering a new trial, is irregular, we will set it aside, and will leave the case in the hands of the1 justices who composed the court when it was heard, as undecided.
McCumT and Fitiiiax. JJ., concurred.

 The question often arises, Wliat acts are judicial, and what ministerial? If no satisfactory definition has been arrived at, it is because the Word "judicial" is necessarily used in different senses, acording to the connexion, and the object with which it is used.
Judicial power, as distinguished from the other functions of government, legislative and executive, is the authority to determine rights of person or property, by arbitrating between adversaries, in specific controversies, at the instance of a party thereto (1 Abb. U. S. Ct. Pr., 186). This is the peculiar quality of the functions of a court.
In a more general sense, powers vested in a court, to be exercised in the ordinary modes of judicial proceeding, are termed judicial, although there be no controversy, or no judicial determination; and, on the other hand, authority to judge and decide questions, when it is vested in administrative officers, is deemed for some purposes judicial, and the acts ot such officers, in the exercise of that discretion, are said to be judicial acts, although the officer may not in strictness be a judge.
The rule of liability of judicial officers for ministerial acts, and the exemption of ministerial • officers from liability for judicial acts, as stated by Beardsley, 3., in Wilson v. Mayor, &c., 1 Den., 595, and approved by Davies, Ch. J., in Nash v. People, 36 N. Y., 607, 617, affords a clear statement of the distinction between ministerial and judicial acts. His language is as follows;
“ Where that [the duty] is absolute, certain and imperative, and every mere ministerial duty is so, the delinquent officer is bound to make full redress to every person who has suffered by such delinquency. Duties which are purely ministerial in their nature, are sometimes cast upon officers whose chief functions are judicial. Where this occurs, and the ministerial duty is violated, the officer, although, for most purposes, a judge, is still civilly responsible for such misconduct.
“ But where the duty alleged to have been violated is purely judicial, a different rule prevails; for no [civil] action lies in any case for misconduct oi delinquency, however gross, in the performance of judicial duties. And although the officer may not in strictness be a judge, still, if his powers are discretionary, to be exerted oi withheld, according to his own view of what is necessary and proper, they are in their nature judicial.”
The following references will afford convenient clue to the principal cases decided in this State, in which the nature of the judicial action has been discussed.
Where any power is conferred upon a court of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordin *240 ary proceedings, the action of the court may be regarded as judicial, irrespective of the original -nature of the power. In general, whenever the law confers a right, and authorizes an application to a court of justice to enforce'that right,—e. g., the right to be admitted to practice law,—the proceeding upon such application must be regarded as judicial, not as executive (Matter of Cooper, 22 N. Y., 67; S. C., 11 Abb. Pr., 301).
The authority given to executive officers to exercise judicial functions incidentally or occasionally, is not that judicial power to which the Constitution of the United States has reference (Dainese v. Allen, 3 Abb. Pr. At S., 214).
Inspectors of elections are not judicial, but administrative officers, and their decision on the admission of a vote is not conclusive in an action in the nature of a quo warranto to try the title to the office (People v. Pease, 27 N. Y., 45; S. C., 25 How. Pr., 405; below in 30 Barb., 588).
Canvassers of election, under the Laws of 1822, ch. 250,—requiring them to attend at the clerk’s office and canvass the votes cast, and certify the result,—do not act judicially, but ministerially; and their certificate may be reviewed on the facts, on an information in the nature of a quo warranto (People v. Van Slyck, 4 Cow., 297).
A mandamus will lie to the commissioner of jurors, to compel him to strike off from the list of jurors the name of a person who is entitled, under the statute, to have his name stricken off. The commissioner of jurors is not a judicial but a ministerial officer within the rule. The act of the commissioner of jurors, in determining upon the sufficiency of the excuse relied upon by such an applicant, is not a judicial act within the rule relating to mandamus. It is true he has to decide on the sufficiency of the excuse offered by a juror to have his name stricken from the list of jurors; but still the nature of the excuse and the duty of the officer are clearly defined by the statute; and when the truth of the facts relied on are shown to him, he has no discretion to exercise, and has no right to keep the name of the juror on the list (People ex rel. Livingston v. Taylor, 1 Abb. Pr. N. S., 200).
Under the act of 1850 (ch. 324),—authorizing health. boards to make regulations, <S$c„— their power is legislative rather than judicial (Reed v. People, 1 Park. Cr., 481; and see People ex rel. Savage v. Board of Health, 33 Barb., 344; S. C., 12 Abb. Pr., 88; 20 How. Pr., 458).
The act of 1866, ch. 74,—establishing the Metropolitan Board of Health,—is not obnoxious to the objection of vesting judicial powers in officers not chosen in the mode prescribed for the choosing of judicial officers by the constitution. The power exercised by the board is .admin *241 istrative rather than judicial (Metropolitan Board of Health v. Heister, 37 N. Y., 661).
Passing an ordinance to authorize the opening or.alteration of a street, under the act of April, 1813, section 177, is the exercise of a legislative, not of judicial power (Wiggin v. Mayor, &c. of N. Y., 9 Paige, 16.
A resolution passed at a town meeting, providing for the raising of money on the credit of the town, to pay bounties to volunteers, is not a judicial act, and cannot be reviewed on certiorari (People ex rel. Dickinson v. Supervisors of Livingston, 43 Barb., 232).
A board of supervisors, in passing resolutions to provide for raising money upon the credit of their county, for the use of said county, or upon the credit of any town thereof, for the use of such town, for the purpose of paying bounties to. volunteers into the military or naval service of the United States, under the authority given by the act of February 8, 1864 (Laws of 1864, ch. 8), are not acting in a judicial, but in a purely legislative capacity; and the supreme court can neither affirm nor reverse, or set aside, mere initiatory resolutions of that character, or make any order in. respect to them, upon certiorari (Ibi).
In the examination and determination of the number of days a census-marshal, appointed under the acts of 1855, was actually and necessarily employed, the supervisors act judicially, and their determination is final,, and not to be reviewed on mandamus (People v, Supervisors of Livingston, 12 How. Pr., 204. Approved and followed in S. C., Gen. T., 1857, 26 Barb., 118).
The act of a tax assessor, in determining what property is and what is-not exempt from taxation, is judicial, and he is not liable for error in his decision (Barhyte v. Shepherd, 35 N. Y., 238; Foster v. Van Wyck, 4 Abb. Pr. N. S., 469).
The apportionment of the tax among the, taxablé inhabitants of the' district is, to a certain extent, a judicial act, and, if the trusteees confine-themselves within the limits of the statute, though they should err in-point of law, or in judgment, they are not civilly nor criminally answerable, if their motives are pure (Easton v. Calendar, 11 Wend., 90. Approved in Folsom v. Streeter, 24 Id., 266; Randall v. Smith, 1 Den., 214).
Public officers are not answerable in damages for their proceedings, on account of an.error in judgment, when acting judicially,—e. g., when the-trustees of a school district adopt a wrong principle in apportioning the tax. If they have general authority in any case, a mere error in law or fact in exercising their authority, will not make their action a nullity, but. it is valid until reversed or set aside (Hill v. Sellick, 21 Barb., 207).
*242 The directors of a mutual' insurance company do not act judicially in making their assessments for the payment of losses, and if they do not apportion the sums to be paid by the several members, as required by the charter, in proportion to the. amount of deposit note of each member, without regard to the length of time any person has been a member, the assessment is invalid (Herkimer County Mutual Ins. Co. v. Fuller, 14 Barb., 373; S. C., 7 How. Pr., 210. Compare Hurlbut v. Carter, 21 Barb., 221).
The authority which trustees of a school district are required to administer, in apportioning a tax, involves the exercise of judgment and discretion,—a power which cannot be delegated (Keeler v. Frost, 22 Barb., 400).
The power to remove an officer for cause is of a discretionary or judicial nature, and unless otherwise specially provided by law, is not the subject of examination or review by any other tribunal than the one in which the power is vested, either in respect to the cause, or in respect to its sufficiency, or existence, or in any respect whatever. [Citing many cases.] (People v. Stout, 11 Abb. Pr., 17; S. C., 19 How. Pr., 171).
Where commissioners are named by statute to lay out a highway, .to begin “ at or near ” A., and terminate at or near B., adopting the most direct and eligible route,—their duty is judicial, and if they do not exceed ¡their jurisdiction, the town officers are concluded by their determination ¡of the route, however injudiciously the commissioners acted (People v. Collins, 19 Wend., 56).
■Under 1 Rev. Stat., 170, § 1,—providing that no warrant shall be drawn unless authorized by law, and that every warrant shall refer to the. law under which it was drawn,—the comptroller should be satisfied, before drawing a warrant, that a law exists, and that, fairly construed, it authorizes the draft, to meet which the warrant is required; and in so doing he acts judicially (People ex rel. Merriam v. Schoonmaker, 13 N. Y. [3 Kern.], 238; reversing S. C., 19 Barb., 657).
The-issuing-of.a writ of habeas corpus is a ministeriahact, and not a judicial one.- Ho power is judicial that does not imply discretion (People v. Nash, 5 Park. Cr., 473; S. C., 16 Abb. Pr., 281; 25 How. Pr. 307. See, also, 36 N. Y., 607, and opinion of Davies, Oh. J., to same effect).
The issuing of warrants for the delivery of official books and papers, after the magistrate has decided that the applicant is entitled to them, is a .ministerial and not a judicial act, and is stayed by a certiorari (Conover’s Case, 5 Abb. Pr., 182; S. C., 26 Barb., 429).
A justice, in issuing a process within his jurisdiction at the request of *243 the party, acts ministerially. If he acts in good faith he is not liable to an action (Rogers v. Mulliner, 6 Wend., 597. Compare 2 Johns. Cas., 49; Matter of Hood, 8 Johns., 44).
In approving, or refusing to approve," an appeal bond, he acts ministerially, notwithstanding he is required to exercise a discretion. If he acts corruptly,—e. g., if he unjustly or oppressively refuses to approve a' sufficient bond, and thereby prevents an appeal,—he is liable to an action (Tompkins v. Sands, 8 Wend., 462).
Where an officer acts judicially, he cannot be made answerable as a trespasser, for an error in judgment. So held, of a recorder of a city who made an order to hold to bail, upon an affidavit, which, though insufficient to sustain the order, presented a fair case for the exercise of his judgment (Harman v. Brotherson, 1 Den., 537. Compare Tompkins v. Sands, 8 Wend., 462; and see People v. Collins, 19 Id., 56).
The distinction between acts of a justice which are judicial, and those which are ministerial,—considered (Tompkins v. Sands, 8 Wend., 462).
A magistrate having jurisdiction to issue a warrant, is not liable in a civil action for deciding on insufficient evidence that a warrant should issue ; for in determining whether there is sufficient evidence to authorize the issuing of a warrant, he acts judicially; and he is not liable while thus acting, even if he erred in judgment. Yet, in making the warrant and delivering it to the officer, he acts ministerially; and if the warrant is void on its face it will not protect him, although he acts in good faith, and w.as authorized by the evidence before him to issue a valid warrant (Blythe v. Tompkins, 2 Abb. Pr., 468, reviewing many cases).
No public officer is responsible, in a civil suit, for a judicial determination, however erroneous it may be, and however malicious the. motive which produced it. This principle applied to the acts of assessors of taxes.[Citing numerous cases.] (Weaver v. Devendorf, 3 Den., 117. Followed, Vail v. Owen, 19 Barb., 22; Brown v. Smith, 24 Id., 419).
In merely making a sale under a decree of sale on foreclosure, the master does not act judicially, within the equity of the provision of 2 Rev. Stat., 275, § 2, which declares that no judge can sit in a cause in which he would be excluded from being a juror, by reason of consanguinity or affinity to either of the parties (Snyder v. Stafford, 11 Paige, 71).
It would be otherwise where a master is directed to ascertain in what order several parcels ought to be sold (,1b.).
The act of taking and certifying the acknowledgment of a deed, is not *244 a judicial act, within the rule disqualifying a judicial officer by consanguinity (Lynch v. Livingston, 6 N. Y. [2 Seld.], 422).
A commissioner of highways is not disqualified from acting as one oi the board,—e. g., in proceedings to discontinue a highway,—by the fact that he is the brother of the applicant instituting the proceedings: The statute disqualifying judges in causes in which relatives in the ninth degree are interested, does not apply to highway commissioners, but only to judges of courts, or officers exercising a judicial authority properly so called. An act of public administration, though requiring the exercise oi judgment, is quite a different thing from the dispensing of justice between man and man. Moreover, the applicant to the commissioners in highway proceedings is not “a party” within the statute (People v. Wheeler, 21 N. Y., 82).
The act of overseers of the poor, in consenting to the disconlinuanoe of a suit which both overseers uniled in bringing, is a judicial act; and there being only two overseers, it requires the concurrence of both (Perry v. Tynen, 22 Barb., 137).
Under section 60 of the canal law,—allowing the commissioners to appeal-where they shall deem the interests of the State to require it,—an appeal signed by one of them with his own name, and the names of the others, under express authority from them, is regular. The bringing oi - the appeal is not such a judicial act as precludes a delegation of the power (People v. Commissioners of Canal Fund, 3 Hill, 599. Compare Bank Commissioners v. Bank of Buffalo, 6 Paige, 497).
Under a statute which requires a report of commissioners to be signed by a majority, they need not all be logether at, the signing, as it involves no deliberate or judicial action (Rochester & Genesee Valley R. R. Co. v. Beckwith, 10 How. Pr., 168).
Selling land under a statute foreclosure is not a judicial proceeding under the Sunday laws (Sayles v. Smith, 12 Wend., 57).