## J. V. N. YATES *against* LANSING.

Where the chancellor committed one of the officers in chancery, for malpractice and contempt, and a judge of the supreme court, on a *habeas corpus*, discharged the officer; and he was afterwards recommitted by the chancellor for the same offence; it was held, that the chancellor was not liable to an action by the officer, for the penalty given by the 5th section

THIS was an action of debt, brought against the defendant, (who is chancellor of the state,) to recover the penalty of 1,250 dollars, under the *fifth* section of the *habeas corpus* act, which declares, " that no person who shall be set at large upon any *habeas corpus* shall be again imprisoned for the same offence, unless by the legal order or process of the court wherein he is bound by recognisance to appear, or other court having jurisdiction of the cause; and that if any person shall knowingly, contrary to this act, recommit or imprison, or cause to be recommitted or imprisoned, for the same offence, or pretended offence, any person so set at large,

of the *habeas corpus* act. (sess. 24. c. 65.)

The penalty given by the statute is imposed on individuals acting ministerially out of court, and does not apply to the acts of a court done of record.

Superior courts of general jurisdiction are not liable to answer personally, for acts done by them in a judicial capacity, or for errors of judgment.

Though a judge in vacation, who refuses to allow a writ of *habeas corpus*, is liable to an action on the statute, as the allowance by him in vacation is not a judicial act, yet the judges of the supreme court, sitting as a court, in term time, may, in their discretion, refuse a *habeas corpus*.

or shall knowingly aid or assist therein, he shall forfeit to the party aggrieved 1,250 dollars, any colourable pretence or variation in the warrant of commitment notwithstanding."

The declaration stated, that on the 18th *August*, 1808, the plaintiff was arrested by the sheriff of *Albany*, by virtue of a writ of attachment issued out of the court of chancery, &c. that so being arrested and in custody of the said sheriff, and not been convict or in execution, by legal process or commitment for high treason, &c. the plaintiff, afterwards, to wit, on the 18th *August*, in vacation term, sued out a *habeas corpus*, under the seal of the supreme court, which was allowed, according to the statute, by the hon. *Ambrose Spencer*, one of the justices of the supreme court, &c. and that on the 19th *August*, he was, by virtue of the said writ of *habeas corpus*, brought before Mr. Justice *Spencer*, at, &c. who, upon the return of the said writ, ordered the plaintiff to be discharged, and set at large, &c. and the said sheriff accordingly set at liberty and discharged the plaintiff, &c. Nevertheless the defendant, well knowing the premises, and not regarding the statute, &c. afterwards, on the 12th *September*, 1808, knowingly, wrongfully, and contrary to the statute aforesaid, did cause the plaintiff to be recommitted and imprisoned for the same offence set forth in the said process or writ of attachment, by colour or pretence of a certain order, bearing date the 5th *September*, 1808, made by the defendant, &c. and did cause the plaintiff to be wrongfully and unlawfully recommitted and imprisoned by the sheriff of *Albany*, for a long time, to wit, for the space of 48 hours, and which order was not the legal order or process of any court wherein the plaintiff was bound by recognisance to appear, nor of any court having jurisdiction of the cause. By reason whereof, &c.

The defendant *pleaded*, " that on the 13th day of *June*, 1808, and for a long time before, he, the said

*John Lansing*, jun. was, and ever since has been, and still is, chancellor of this state, to wit, &c. and that he, as chancellor of this state, and not otherwise, at a court of chancery of this state, at, &c. on the 13th *June*, 1808, as it was right and lawful for him, as chancellor aforesaid, to do, made an order, of the tenor and effect following, &c. (Here the order was set forth.) And the said *John Lansing*, jun. further says, that he, as chancellor of the state, and not otherwise, on the 17th *August*, 1808, at, &c. caused a writ of attachment to be issued against the said *J. V. N. Yates*, out of the said court of chancery, under the seal of the said court, in the words following; (here was set forth the writ of attachment;) and caused the said writ of attachment on the day and year last aforesaid, to be delivered to the sheriff of the city and county of *Albany*, to be executed according to law, as it was right and lawful for him the said *John Lansing*, jun. as chancellor of this state, to do, which writ of attachment and order are the same writ of attachment, or the order recited therein, mentioned in the declaration of the said *J. V. N. Yates*, and not other or different; and that the said *J. V. N. Yates* was, under and by virtue of the said writ of attachment, imprisoned by the sheriff of the city and county of *Albany*, as the said *J. V. N. Yates* in his said declaration hath alleged, and as, &c. and the said *John Lansing*, jun. further says, that true it is, that the writ of *habeas corpus*, mentioned in the said declaration, was sued out, prosecuted, allowed, signed, endorsed and delivered, &c. and that in obedience to the command of the said writ of *habeas corpus*, the said sheriff had the body of the said *J. V. N. Yates* before *Ambrose Spencer*, Esq. one of the justices, &c. with the said writ of *habeas corpus*, and did certify and return, &c. And the said justice did, thereupon, order and direct, that the said sheriff should set at large the said *J. V. N. Yates* of and from the caption and detention by pretext

of the said writ of attachment, and that the said sheriff, in obedience to the said order and direction, did set at liberty and discharge the said *J. V. N. Yates*, &c. But he the said *John Lansing*, jun. says, that he, as chancellor of this state, and not otherwise, at a court of chancery, held, &c. on the 5th *September*, 1808, as it was right and lawful for him, as chancellor of this state, to do, made an order to the tenor and effect following; (here the order was set forth ;) which is the same order for recommitment in the declaration of the said *J. V. N. Yates* above mentioned, and not other or different. And the said *John Lansing*, jun. further says, that the said order was, on the, &c. delivered by his command, as chancellor aforesaid, to the sheriff of, &c. and the said sheriff, under and by virtue of the said order, to wit, on the 12th day of *September* aforesaid, took and imprisoned the said *J. V. N. Yates*, as it was right and lawful, and the duty of the said sheriff to do, which is the same recaption and imprisonment set forth in the declaration of the said *J. V. N. Yates*, and not other or different, and this he is ready to verify, wherefore he prays judgment, &c. To this plea there was a general demurrer and joinder. (For the proceedings on the attachment and *habeas corpus*, mentioned in the declaration and plea, see 4 *Johns. Rep.* 317.)

At the last term—(*Tuesday, November* 14th.)

*T. A. Emmet*, in support of the demurrer, stated the points on which the plaintiff relied. 1. That the facts disclosed by the plea bring the defendant within the fifth section of the *habeas corpus* act, and that no matter was offered by the plea which could form an exception to the act.

2. That the attachment set forth in the plea is illegal, upon the face of it, having no return day, and being indefinite as to the duration of the imprisonment.

3. That the recommitment being by *order*, and not by *writ*, was void.

4. That the defendant had no rightful power to recommit, after the plaintiff had been discharged by *habeas corpus*.

He observed, that after the decision of the court in the case of Mr. *Yates*, on the return of the *habeas corpus*, (4 *Johns. Rep.* 317.) he should not presume to argue the points arising in this cause, which he supposed to be comprehended in the opinion delivered by the court in that case ; but he wished for a speedy decision on the demurrer, in order that the plaintiff might bring a writ of error.

KENT, Ch. J. There is a point of very great importance, arising on the pleadings in this cause, which was not argued or decided in the case of Mr. *Yates*, on the *habeas corpus* ; that is, whether the chancellor, while acting officially and judicially, is responsible, in this action, for what he has done as *chancellor*.

*Emmet* said, that as he was instructed, he should decline arguing that point, and would leave the whole case to the court, on the pleadings before them. He did not think that he could add any thing material to what he had said in his argument of the former case.

*Harison*, contra, observed, that he had come prepared to argue against the demurrer, but as the counsel on the other side declined any argument, he did not think it proper to say any thing further on the subject. He was ready, however, to argue the point suggested by the chief justice.

KENT, Ch. J. I consider the point as of so much importance that I shall not express my judgment on the demurrer, without bestowing some further consideration

on the case, and stating the reasons and grounds of the opinion I may form, at length; particularly after the intimation, that a writ of error is to be brought. Though the plaintiff's counsel declines arguing the case, yet as the court must give judgment on the demurrer, I feel it to be my duty to examine it for myself. And as there are so many other causes now to be argued and decided, it may be necessary to take time until the next term; but this will produce no delay to the plaintiff, as the court of errors will not sit until after the *February* term.

*Cur. adv. vult.*

The opinion of the court was now delivered by

KENT, Ch. J. The record before the court presents the case of a civil suit, brought against the chancellor of this state, for an act done by him in his judicial capacity, while sitting in the court of chancery. The pleadings admit that the defendant did, as chancellor, and not otherwise, at a court of chancery, held on the 15th of *September*, 1808, order the plaintiff, after he had been discharged upon *habeas corpus*, by one of the judges of this court, to be recommitted for the contempt and malpractice for which he had been originally imprisoned, and that the action is brought for such reimprisonment, and to recover the penalty mentioned in the 5th section of the *habeas corpus* act.

The counsel who appeared for the plaintiff at the last term, (and who was the same counsel that argued the case upon the *habeas corpus* at the last *February* term,) declined to argue this case, but would not consent that judgment should pass against the plaintiff by default, and pressed the court for a decision during the term, and accompanied his motion with an intimation that he intended to carry the cause, by writ of error, into the court for the correction of errors. This fact must be my

ALBANY,
Feb. 1810.

YATES
v.
LANSING.

apology for bestowing more time upon the case, than the doctrine which it involves, might seem to require. We have given it a deliberate attention, and in the opinion of the court, the action cannot be sustained upon any principle of law, justice or public policy.

The words of the statute upon which the suit is brought, are, " that no person who shall be set at large upon any *habeas corpus*, shall be again imprisoned for the same offence, unless by the legal order or process of the court wherein he is bound by recognisance to appear, or other court having jurisdiction of the cause; and if any person shall knowingly, contrary to this act, recommit or imprison, or cause to be recommitted or imprisoned for the same offence, any person so set at large, he shall forfeit to the party grieved, 1,250 dollars." There appears to be several strong reasons why this section in the statute cannot support the action.

The order of the court of chancery was legal, inasmuch as the previous discharge of the plaintiff was not in a case authorized by the statute, and was null and void in law. This was the decision of the court at the last *August* term,* and it will be unnecessary to review that point, or repeat what was then said. According to the judgment of the court, there cannot be a pretext for this suit, even if the defendant was otherwise liable for an undue exercise, or misapplication of the powers of his court.

But the point which I purpose now principally to consider is, whether there be any foundation in law for the suit, admitting that the defendant was mistaken in supposing that the discharge of the plaintiff under the *habeas corpus*, was unduly made. The statute allows the party so discharged, to be again imprisoned for the same offence, provided it be by the legal order or process of the court wherein he is bound by recognisance to appear, *or other court having jurisdiction of the cause.*

* *4 Johns. Rep.* 317.

Any court which has jurisdiction of the subject matter, may reimprison, notwithstanding the discharge. To state a plain case; if a person committed at a court of *oyer and terminer*, or sessions of the peace, of a felony, and imprisoned in the state prison, be discharged by a judge on *habeas corpus*, on the ground that the court had no authority to commit, or that the order of commitment was invalid, would any one doubt that the court might cause the convict to be further reimprisoned either upon the same warrant, if it judged it sufficient, or by awarding a new and better one? The statute never intended such a destruction of principle, as to entrust to a judge in vacation, the power to control the judgment, or check the jurisdiction of a court of record.

Our system of appellate jurisprudence is built upon a sounder foundation, and instead of entrusting to the *fiat* of a single judge, to correct the errors of any court of justice, it has provided the constitutional process by appeal, or a writ of error. It is sufficient that the court which commits, has jurisdiction of the cause of commitment; and as the cause in the present case was an alleged malpractice and contempt, the court of chancery most undoubtedly had jurisdiction over the subject matter. It is decisive on the point, that the court considered the act of which it complained, to be a contempt and malpractice, by being an unauthorized interference with the practice of the court. Every court judges exclusively for itself, of its own contempts; no other court, and much less a single judge out of court, can undertake to judge on the question. The plaintiff was recommitted, to use the language of the order, for " contempt and malpractice ;" and whether the court of chancery was right or wrong in considering that the plaintiff's conduct amounted to a contempt, and whether it took the proper steps to ascertain the contempt, is perfectly immaterial as to the point of jurisdiction. It had authority to punish contempts. It must judge what are con-

ALBANY,
Feb. 1810.

YATES
v
LANSING.

tempts. Practising as solicitor, without leave, and practising in another's name, and practising in another's name without his knowledge, are all misdemeanors, and contempts of the court. These are undeniable propositions.

On the ground which the court took, then, it certainly had jurisdiction of the subject matter. The case of *Howell*, the recorder of *London*, is to this purpose. He presided at a court of *oyer and terminer*, and fined and imprisoned a juror, for bringing in a wrong verdict. In a suit against him for this act, the whole court of C. B. declared that the *oyer and terminer* had jurisdiction of the cause, because it had power to punish a misdemeanor in a juror; though in the case before the court, the recorder had made an erroneous judgment in considering the act of the juror as amounting to a misdemeanor, when in fact it was no misdemeanor. (*Hamond* v. *Howell*, 2 *Mod.* 218.)

To be prepared to give a sound construction to the statute giving the penalty in question, we ought to bear in mind the uniform and solemn language of the common law, as to the responsibility of judges, by private suit, for their judicial decisions. " We shall never know," says Lord *Coke*, " the true reason of the interpretation of the statutes, if we know not what the law was before the making of them." Where courts of special and limited jurisdiction exceed their powers, the whole proceeding is *coram non judice*, and all concerned in such void proceedings are held to be liable in trespass. (Case of the *Marshalsea*, 10 *Co.* 68. *Terry* v. *Huntington*, *Hardres*, 480.) But I believe this doctrine has never been carried so far as to justify a suit against the members of the superior courts of general jurisdiction, for any act done by them in a judicial capacity. There is no such case or decision which I have met with, and I find the doctrine to be decidedly otherwise. In *Miller* v. *Seeve*, (2 *Black. Rep.* 1141.) Lord Ch. J. *De Grey* said,

that the judges of the king's superior courts of general ALBANY, Feb. 1810.

YATES
v.
LANSING. jurisdiction were not liable to answer personally for their errors in judgment. The protection as to them was absolute and universal; with respect to the inferior courts, it was only while they act within their jurisdiction. The penalty sought for in the present suit, was, I think, very clearly imposed upon individuals only, acting ministerially or extrajudicially out of court. The words of the statute do not apply to the act of a court done of record; and we ought to require a positive application of the penalty to such a case, before we can in decency presume that the statute intended so far to humble and degrade the judicial department, as to render the judges responsible in a civil suit for their judicial acts.

The doctrine which holds a judge exempt from a civil suit or indictment, for any act done, or omitted to be done by him, sitting as judge, has a deep root in the common law. It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the *English* courts, amidst every change of policy, and through every revolution of their government. A short view of the cases will teach us to admire the wisdom of our forefathers, and to revere a principle on which rests the independence of the administration of justice. *Juvat accedere fontes atque haurire.*

Serjeant *Hawkins* (b. 1. c. 7. p. 6.) lays down this general rule, as the result of his inquiries on the subject; " That the law has freed the judges of all courts of record from all prosecutions whatsoever, except in the parliament, for any thing done by them openly in such courts as judges. For," he adds, " the authority of government cannot be maintained, unless the greatest credit be given to those who are so highly entrusted with the administration of public justice, and that if they should be exposed to the prosecution of those whose partiality to their own causes would induce them

to think themselves injured, it would be impossible for them to keep up in the people that veneration of their persons, and submission to their judgments, without which it is impossible to execute the laws with vigour and success."

We meet with the principle here stated as early as the *Book of Assise*, 27 *Ed.* III. pl. 18. The case there was, that *A.* was indicted, for that being a judge of *oyer and terminer*, certain persons were indicted before him of trespass, and he had entered upon the record that they were indicted of felony, and judgment was demanded, if he should answer for falsifying the record, since he was a judge by commission ; and all the judges were of opinion that the presentment was void. And at this same early period we find this wise protection extended equally to grand jurors. In 21 *Ed.* III. *Hil.* pl. 16. a writ of conspiracy was sued in K. B. and the question was, whether it be a good plea to the action, that the defendants were indictors in the case complained of, and it was held to be a good plea. In 9 *Hen.* VI. 60. pl. 9. an action upon the case was brought against *A.* for fraud, in executing the office of escheator, and *Babington*, J. said, and so it was agreed, that such a suit would not lie against a judge of record. So in 9 *Ed.* IV. 3. pl. 10. it was held by *Littleton*, J. and not denied, that an action of assault and battery would not lie against a justice of the peace, for what he did as a judge of record ; and the same principle was afterwards more solemnly advanced by all the judges, in 21 *Ed.* IV. 67. pl. 49. They all concurred in opinion, that for what a justice of the peace did *in the sessions*, he was not amenable.

These cases, and many more opinions of the like effect, which could be gleaned from the *Year Books*, conclusively show, that judges of all courts of record, from the highest to the lowest, and even jurors, who are judges of fact, were always exempted from prosecution, by action or indictment, for what they did in their judi-

cial character. It did not escape the discernment of the early sages of the law, that the principle requisite to secure a free, vigorous and independent administration of justice, applied to render jurors, as well as judges, inviolable ; and I fully acquiesce in the opinion of Lord Ch. J. *Wilmot*, that trials by jury will be buried in the same grave with the authority of the courts who are to preside over them. But I proceed to show that in subsequent periods of the *English* law, the doctrine was equally asserted and enforced. *Staunford*, in his *Pleas of the Crown*, which was first published in 1567, says, (p. 173.) that no prosecution for conspiracy lies against grand jurors, for it shall not be intended, that what they did, by virtue of their oaths, was false and malicious ; and that the same law applied to a justice of the peace, for he shall not be punished as a conspirator, for what he does in open sessions as a justice. In the case of *Floyd* and *Barker*, (12 *Co.* 23.) the subject underwent a solemn consideration by Lord *Coke*, and all the judges ; and their resolution was, that no grand juror was responsible for finding an indictment, and that no judge, who tries and gives judgment in a criminal case, or does any act in court, was to be questioned for it, either at the suit of the party, or of the king. And it was observed, " that if the judges of the realm who have the administration of justice, were to be drawn in question, except it be before the king himself, it would tend to the slander of justice, and those who are the most sincere would not be free from continual calumniations." In *Aire* v. *Sedgwick*, (2 *Roll. Rep.* 199.) *Noy*, J. laid down the same uncontradicted rule, that no action lay against a judge for any thing which he did as judge. But the case of *Hammond* v. *Howell*, (1 *Mod.* 184. 2 *Mod.* 218.) deserves our particular notice, as being peculiarly weighty on the point before us. This is the case to which I have already alluded for another purpose. The defendant was recorder of *London*, and, as one of

ALBANY,
Feb. 1810.

YATES
v.
LANSING.

the judges of *oyer and terminer*, had fined and imprisoned the plaintiff, because he had brought in a verdict, as a petit juror, contrary to the direction of the court and the evidence. If ever a case was calculated to awaken sensibility, and to try the strength of the principle, this must have been one. It arose some time after the decision in *Bushell's* case, in which it was argued by all the judges, that a juror was not finable for his verdict. The act of the defendant was admitted to have been illegal, and no doubt it struck the whole court as a high-handed and arbitrary measure, The counsel for the plaintiff admitted the weight of the objection, that an action would not lie against a judge of record for what he did, *quatenus* a judge ; and he endeavoured to except this case from the general principle, by contending, that what the defendant did, was not warranted by his commission, and that, therefore, he did not act as judge. But the court did not yield to such miserable sophistry ; for they held, that the bringing of the action was a greater offence than the imprisonment of the plaintiff, for it was a bold attempt both against the government and justice in general. They said that no authority, or semblance of an authority, had been urged for an action against a judge of record, for doing any thing as judge ; that this was never before imagined, and no action would lie against a judge, for a wrongful commitment, any more than for an erroneous judgment ; that though the defendant acted erroneously, he acted judicially, and if what he did was corrupt, complaint might be made to the king, and if erroneous, it might be reversed.

The case of *Groenvelt* v. *Burnwell*, (12 *Mod.* 386. 1 *Salk.* 396. 1 Ld. *Raym.* 454.) arose long after the passing of the *habeas corpus* act, and the unanimous opinion of the court of K. B. was given by Sir *John Holt*, whose name has always been held in reverence by *English* freemen ; for he was a sound judge and an in-

flexible patriot, who manifested, on every occasion, a
generous and distinguished zeal for the liberties of the
people. He went at large into the cases in support of
the doctrine, and showed to every one's entire satisfac-
tion, that judges were not liable to an action by the
party, for what they did as judges ; that no averment
was admissible that a judge of record had acted against
his duty ; that if even a justice of the peace should re-
cord that, upon his view, as a force which was no force, he
could not be drawn in question, for it is a judicial act ;
that, in like manner, jurors were not responsible for their
verdicts, because they were judges of fact; and he
added, in this emphatical language, " that it would
expose the justice of the nation, and no man would
execute the office of judge, upon peril of being ar-
raigned, by action or indictment, for every judgment
he pronounces." In the very modern cases of *Miller* v.
*Searl and others*, (2 *Black. Rep.* 1145.) and of *Mostyn* v.
*Fabrigas*, (*Cowp.* 172.) *De Grey*, Ch. J. in the one, and
Lord *Mansfield* in the other case, explicitly and em-
phatically declare the same doctrine. Indeed, I am
persuaded that the discussion of the question, even under
this 5th section of the *habeas corpus* act, would not
now be endured in any court in *Westminster Hall.*

I shall close this review of the cases with noticing one
arising in an *American* court. The case I allude to is
that of *Phelps* v. *Sill*, lately decided in the supreme
court of *Connecticut.* (1 *Day's Cases in Error*, 315.)
From the characters composing that court, I think the
decision entitled to great consideration. That was
a suit against a judge of probates for omitting to take
security from a guardian, and the court held that the
action would not lie. They said that " it was a settled
principle, that a judge is not to be questioned in a civil
suit for doing, or for neglecting or refusing to do a par-
ticular official act, in the exercise of judicial power.
That a regard to this maxim was essential to the ad-

ABLANY,
Feb. 1810.

YATES
v.
LANSING.

ministration of justice. If by any mistake in the exercise of his office, a judge should injure an individual, hard would be his condition, if he were to be responsible for damages. The rules and principles, which govern the exercise of judicial power, are not, in all cases, obvious ; they are often complex, and appear under different aspects to different persons. No man would accept the office of judge, if his estate were to answer for every error in judgment, or if his time and property were to be wasted in litigations with every man whom his decisions might offend."

After this recognition of the principle, I may confidently appeal to every sound and intelligent lawyer, whether it could *possibly* have been the meaning of the *habeas corpus* act, to make the chancellor, or any other judge of any other court of record, responsible in a civil suit, for a heavy penalty, for an action done of record by him, while sitting in his court of justice ? Ought such a sacred principle of the common law, as the one we have been considering, to be subverted, without an express declaration to that effect ? Does such a construction appear ever to have been entertained in any book, or by any individual, from the time of the statute of *Charles* II. until the bringing of the present suit ? Our act is but a transcript from the *English* statute, and Serjeant *Hawkins* (b. 2. c. 15. § 24.) expressly excludes every such construction. " The *habeas corpus* act," he observes, " makes the judges liable to an action at the suit of the party, *in one case only*, *viz.* in refusing to award a *habeas corpus*, and seems to leave it to their discretion in all other cases, to pursue the directions of the act, in the same manner as they ought to execute all other laws, without making them subject to the action of the party, or to any other express penalty or forfeiture." The penalty to which the chancellor and judges are liable, is mentioned in the fourth section of the act ; and that is given against them by name, and only for

their refusal, *in the vacation time*, to allow a writ of *habeas corpus*, when duly applied for. The chancellor and judges may refuse such a writ, at their discretion, if applied for in term time, and the penalty will not attach. It is only when they refuse, in a mere ministerial capacity, to allow a writ, that they are made responsible. The allowance of a writ in vacation, is not a judicial act. It is merely analogous to the case stated in *Green* v. *The Hundred of B.* (1 *Leon.* 323.) where it was held, that an action on the case lay against a justice of the peace, for refusing to take the oath of the party robbed, because, in such case he did not act as a judge, but as a particular minister appointed by the statute of *Eliz.* to take examinations. The *habeas corpus* act does not, then, in any of its provisions, violate, or even touch the principle, that no suit lies for a judicial act. Though the judge is bound under a penalty, to allow the writ, yet when the prisoner is brought before him he is to discharge, bail, or remand him, as he shall be advised; and no action or penalty is given for what he shall then do or refuse to do.

Judicial exercise of power is imposed upon the courts. They *must* decide and act according to their judgment, and therefore the law will protect them. The chancellor, in the case of the plaintiff, was bound in duty to imprison and reimprison him, if he considered his conduct, as amounting to a contempt of his court. The obligations of his office left him no volition. He was as much bound to punish a contempt committed in his court, as he was bound in any other case to exercise his power. He may possibly have erred in judgment, in calling an act a contempt which did not amount to one, and in regarding a discharge as null, when it was binding. This court may have erred in the same way; still it was but error of judgment, for which neither the chancellor, nor the judges of this court, are or can be responsible in a civil suit. Such responsibility would

be an anomaly in jurisprudence. No statute could have intended such atrocious oppression and injustice. The penalty is given only for the voluntary and wilful acts of individuals, acting in a private or ministerial capacity. It is a mulct, and given by way of punishment. *The person* who forfeits it, must " *knowingly, contrary to the act,*" reimprison, or cause the party to be reimprisoned. There must be the *scienter,* or intentional violation of the statute ; and this can never be imputed to the judicial proceedings of a court. It would be an impeachable offence, which can never be averred or shown, but under the process of impeachment.

No man can foresee the disastrous consequences of a precedent in favour of such a suit. Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence, and destroy their authority. Instead of being venerable before the public, they become contemptible ; and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty.

I am, therefore, of opinion that judgment ought to be entered for the defendant.

THOMPSON, J. and VAN NESS, J. concurred.

YATES, J. was absent.

SPENCER, J. The decision of the court, at the last *August* term, in the matter of *John V. N. Yates,* entitles the defendant to judgment on the demurrer. A majority of this court held that the recommitment of the plaintiff, after he had been set at large on *habeas corpus,* was a legal and justifiable act.

I have not thought it necessary to examine the other point in the cause, with a view to deliver an

opinion on it; but I have so far considered it, as to be unable to subscribe to several positions in the opinion just delivered; I must, therefore, be considered as giving no opinion on that point.

Judgment for the defendant.