LOUISA NASH, APPELLANT, *v.* THE PEOPLE, &c., RE-
SPONDENTS.

*Habeas Corpus, City Judge of New York City cannot issue Out of Court.*

The City Judge of New York city is not authorized by any existing law of
this State, out of court, to allow and issue the writ of habeas corpus.

*E. T. Gerry* for Appellant.

*A. Oakey Hall* for Respondents.

DAVIES, CH.J.—The question presented for adjudication upon
this appeal is, whether the City Judge of the city of New York is
authorized by any existing law of this State, out of court to issue
and allow the writ of habeas corpus. It is claimed, on the part
of the Appellant, that such power and authority are vested in the
Recorder of said city, and that the powers and functions of the
Recorder have been conferred by law upon the City Judge. It
will be appropriate to consider, in the first place, whether the
Recorder of the city of New York has the power to allow the
writ; and in the next place, if he has, then to inquire whether
that power has been conferred upon the City Judge. The history
of the legislature of this State, in reference to this matter, is as
follows: The Act of February 21, 1787 (1 Greenl. Laws, 369),
authorized the chancellor or justices of the Supreme Court to
issue the writ of habeas corpus. By the Act of 24th of March, 1801
(1 K. & R. Laws, 286), entitled "an Act to prevent unjust impris-
onment, by securing the benefit of the writ of habeas corpus," the
writ could be moved for and obtained out of the Court of Chan-
cery, or out of the Supreme Court, and also from the chancellor, and
every judge of the Supreme Court out of court; and section 4 of that
act declared, that if the chancellor, or any judge of the Supreme
Court, in vacation time, should deny to allow the writ, he should
forfeit the sum of $1,250 to the party grieved. Section 12 of said
act (ib. p. 290) provides that the Recorder of the city of New
York shall be, ex officio, a commissioner, equally authorized and

14

required with a judge of the Supreme Court to do and execute the powers and trusts which said judge is authorized and required to perform by said act. This I believe to be the original source of the authority of the Recorder of the city of New York to issue and allow said writ. The Act of March 24, 1801, entitled "an Act concerning the Supreme Court" (1 K. & R. Laws, 314), by the eighth section declares that the Recorder of the city of New York shall be, ex officio, a commissioner, equally authorized with a judge of the Supreme Court to do and perform the acts which any such judge might do, by virtue of said act, out of court, except taxing costs and signing rolls; "and also to allow writs of habeas corpus, and to admit prisoners to bail in all cases and in like manner as any such judge may do." This section would seem to be a repetition and an enlargement of the powers conferred upon the Recorder by the twelfth section of the act of the same date already referred to. An act was passed April 10, 1805 (Laws of 1805), providing for the appointment of a commissioner for the county of Oneida, with the same powers as those conferred upon the Recorder of New York by the eighth section of the second Act of March 24, 1801, already referred to, and with some additional powers. An act was passed on the 2d of April, 1810, authorizing the appointment of a commissioner for the county of Ontario, with the like powers as contained in the last-mentioned act (Laws of 1810). Both these last-mentioned acts were revised in the revision of 1813 (1 Rev. Laws, V. & W. 322). The two acts of March 24, 1801, were also revised in this revision (id. 318–354), and in this revision of the act first referred to, of March 24, 1801, entitled "an Act to prevent unjust imprisonment," &c., section 12 of that act was omitted, leaving the authority, by virtue of this last-mentioned revised act, to issue said writ, with the Court of Chancery and the Supreme Court, and, in vacation, with the chancellor or any judge of the Supreme Court.

In the revision of the Act of March 24, 1801, entitled "an Act concerning the Supreme Court" (id. 318), the same powers that were conferred upon the Recorder of the city of New York by the eighth section of the Act of March 24, 1801, were, by the eleventh

section of this revised act, conferred upon the Recorders of the cities of New York, Albany, and Hudson; and this undoubtedly is the reason why the twelfth section of the Act of March 24, 1801, entitled " an Act to prevent unjust imprisonment," &c., was omitted in the revision of 1813 of the last-mentioned act. The Act of March 24, 1801, was in express terms repealed by the Act of April 13, 1813, entitled " an Act to repeal the acts and parts of acts therein mentioned " (id. vol. ii., p. 556). By the eleventh section of this revised act (id. vol. i., p. 321), the Recorders of New York, Albany, and Hudson, were declared ex officio commissioners, and equally authorized and empowered with the justices of the Supreme Court, to do and perform, out of court, all that said judges might do, and to allow writs of habeas corpus, and writs of certiorari, and, in the absence of the Recorders of New York and Albany from either of said cities, the clerks of the Supreme Court residing therein were authorized to perform the duties devolved upon such Recorders by such act during such absence. This act was amended by chap. 277 of Laws of 1818 (Laws of 1818, p. 298), but not in any particular essential to the question now under consideration. The revisors in their notes to the proposed revision of 1830, of the habeas corpus act, say : " We have two statutes relating to the celebrated writ of habeas corpus ad subjiciendum—the revised Act of 1813 (1 R. L. 354), and the amendatory Act of 1818 (Laws of 1818 p. 298 ; 5 Ed. Stat. at large, 511). The Acts of February 25, 1813 (1 Rev. Laws, V. & W., 318), and of April 5, 1813 (ib. 354), and the Act of 1818, were all repealed by the General Repealing Act of December 10, 1828 (3 R. S., 1 ed., pp. 132–141 ; Nos. 85–92, 268.) We are therefore to look to the Revised Statutes solely as to the powers of the Recorder of New York in the premises ; and the following provisions of those statutes, so far as the powers of the Recorder of New York are affected, supersede all previous enactments, and are to be regarded as the substitute therefor. " Every Recorder of a city, and every judge of the County Courts of any county, being of the degree of counsellor in the Supreme Court, shall, by virtue of their respective offices, be Supreme

Court commissioners, and shall be authorized and required to perform all the duties herein conferred" (2 R. S. 281, § 32, 1 ed.). The previous section 18 (id. p. 279), defines the powers of Supreme Court commissioners, which, in brief, were, that such commissioners could discharge all the duties of a justice of the Supreme Court which the latter might perform and execute out of court. By section 8 of article 14 of the Constitution of 1846, the office of Supreme Court commissioner was abolished, from and after the first Monday of July, 1847. At the time this constitution went into operation, there were in the city of New York, the Superior Court, Court of Common Pleas, Sessions, and Surrogate's Court; and section 12 of said article 14 declared that said courts should remain, until otherwise directed by the legislature, with their present -powers and jurisdictions. At this time the statutes of this State made it the especial duty of the Recorder of said city, to hold said Court of Sessions therein (Davies' Laws, p. 361). By chap. 255 of the Laws of 1847, (Laws of 1847, vol. i., p. 279), it was declared in the seventh section thereof, that the justices of the Superior Court of said city, thereafter to be elected, should have and possess the same powers, and perform the same duties, as the justices of that Court then had, possessed, and performed; and the same provision was made applicable to the judges of the Court of Common Pleas. I have been unable, after the most diligent examination, to find any similar provision relative to the Recorder of New York; and we must assume that the researches of counsel have been equally unavailing, or we should have had a reference thereto.

This Court held, in the case of Renard *v.* Hargous (3 Kernan, 259), that the justices of the Superior Court of New York who were, by the Revised Statutes (2 R. S. 210, § 33, 2d ed.), declared to be ex officio Supreme Court commissioners, ceased to be such on the first of July, 1847; and but for the provisions of the Act of May 12, 1847, continuing to them the same powers, and authorizing them to perform the same duties as the justices of that Court then had, possessed, and performed, would have had no power, after the adoption of the Constitution of 1846, to have

any of the duties devolved upon them by law as ex officio Supreme Court commissioners. In the view of this Court, the only source of power from which the justices of the Superior Court could continue to discharge the duties of a Supreme Court commissioner, was found exclusively in the Act of May 12, 1847. As the power of the Recorder of New York to issue the writ of habeas corpus, after the enactment of the Revised Statutes, was derived exclusively from the authority conferred upon him by the provision already quoted, to be ex officio a Supreme Court commissioner, and authorized to perform all the duties conferred upon that officer, it legitimately follows, from the authority of this case, that upon the abolition of the office of Supreme Court commissioner, all the powers and duties incident to that office, which had been devolved upon any other officer, fell with it. This case conceded and was decided upon the principle, that but for the subsequent legislation, the justices of the Superior Court, who were ex officio Supreme Court commissioners, would have had no power to discharge the duties pertaining to that office after its constitutional abolition. As there is not found any other source of power for the Recorder of New York to exercise the authority to issue the writ of habeas corpus, other than that of the provision of the Revised Statutes authorizing him to perform the duties of Supreme Court commissioner, such office having been abolished, the powers and functions of it cannot any longer be exercised by it, without further and additional legislation. These views acquire strong, if not decisive confirmation, from the case of Hayner *v.* James (17 N. Y. 316). In that case it was held, that although the constitution had abolished the office of Supreme Court commissioner, its functions remain and may be distributed by the legislature among any of the judicial officers authorized by the constitution, and that the act of the legislature of 1849 (chap. 121), giving to the Recorder of Troy the powers of a justice of the Supreme Court at chambers, is constitutional. The power of the Recorder was sustained distinctly upon the ground that it was competent for the legislature to provide for the transaction of chamber business of the Supreme Court,

by committing it to existing judicial officers, in the manner in which it had been done by the act then under consideration.

If the views of the Appellant's counsel be correct, the Act of 1849, conferring the powers upon the Recorder of Troy, was entirely supererrogatory, as the Recorder of that city, by virtue of the general provision of the Revised Statutes, was already a Supreme Court commissioner ex officio (2 R. S. 210, § 32, 2d ed.). If legislation, subsequent to the abolition of the office of Supreme Court commissioner, was essential, as this Court supposed it was, to enable the Recorder of Troy to discharge the duties of a judge of the Supreme Court at chambers, it is not perceived why it is not equally essential to enable the Recorder of the city of New York to discharge the same duties.

The Revised Statutes declare to whom the application for the writ of habeas corpus shall be made, and what tribunal or officers are authorized to issue the same:

1. To the Supreme Court, during its sitting, or:

2. During any term or vacation of the Supreme Court, to the chancellor or any one of the justices of the Supreme Court, or any officer who may be authorized to perform the duties of a justice of the Supreme Court at chambers (2 R. S. 466, 2d ed.).

It is thus seen that the Recorder, eo nomine, is not designated as one of the officers authorized to grant the writ, but that he could have done so by virtue of that other provision of the statute constituting him a Supreme Court commissioner ex officio, and therefore authorized to perform and discharge the duties of such commissioner. As already observed, upon the abolition of the latter office, this Court has held that all the powers and duties which another officer was authorized to perform as ex officio such commissioner, ceased and could be no longer exercised by him without additional and further legislation.

It is not claimed, on the part of the Appellant, that the City Judge possesses any more extensive powers than those conferred upon the Recorder. Such a claim, if made, could not successfully be maintained. The act creating the office of City Judge was passed in 1850 (Laws of 1850, p. 388, chap. 205), and the

third section, defining the powers of the City Judge, is in these words : " All judicial powers vested by law in the Recorder of the city of New York are hereby conferred upon such City Judge, and said City Judge shall, concurrently with said Recorder, perform and discharge all judicial duties imposed upon such Recorder."

It is insisted upon, on the part of the people, that assuming the Recorder is authorized to issue this writ, it by no means follows that the same power is conferred upon the City Judge. We have before us the source and fountain from which the City Judge derives all his powers, and unless it be made to appear that the issuing of this writ is the exercise of a judicial power, it is very evident that the authority to issue it, even though possessed by the Recorder, has not been conferred upon the City Judge. The issuing of this writ is not a matter of discretion. The Revised Statutes declare, " If any Court or officer, authorized by the provisions of this article to grant writs of habeas corpus, or certiorari, shall refuse to grant such writ when legally applied for, every member of such Court who shall have assented to such refusal, and every such officer, shall severally forfeit to the party aggrieved one thousand dollars." There has already been quoted the provision on this subject existing previous to the revision of 1830, and the revisors extended the penalty so as to include the judges of the Court in term time. They state, as the ground of the proposed change, that " no reason is perceived why the distinction made in the original section should be retained. It is said that the judge acts *ministerially*, and not judicially, in allowing or refusing the writ, and that he may therefore be subjected to a penalty. The same remark applies to the Court ; and if it is deemed just to impose a penalty for the improper exercise of the official function in the one case, why not extend it to the other ? " The legislature approved of these suggestions, and imposed the penalty, not only upon the officer when not sitting or acting as a Court, or a component part thereof, who should deny the writ, but also upon the members of the Court, when sitting and acting as such, who should assent to or concur

in such refusal. It would seem very clear, therefore, that the legislature assumed and intended to declare that in whichever capacity or character the judge or officer authorized to entertain application for this writ might be supposed to act, he was in fact to be deemed as acting ministerially and not judicially. We are driven to this conclusion, as it cannot be presumed that the legislature intended to adopt a principle in conflict with long-established and a uniform current of authority, and impose a penalty upon a judge, or subject him to personal responsibility, in a matter wherein he acted judicially. (Seaman v. Patten, 2 Caines' T. R. 312; Moor v. Ames, 3 id. 170; Yates v. Lansing, 5 Johns. 282; S. C., 9 id. 395; Jenkins v. Waldron, 11 id. 114; Wilson v. The Mayor of N. Y. 1 Denio, 595.) If it be conceded that the Recorder had the authority, after the first of July, 1847, to issue the writ of habeas corpus, such act is conclusively settled by the authorities quoted, and by legislative action and declaration, to be ministerial in its nature and not judicial. Chief Justice Kent, in Yates v. Lansing (5 Johns. 296), says: "The chancellor and judges may refuse such a writ at their discretion if applied for in term time, and the penalty will not attach. It is only when they refuse, *in a mere ministerial* capacity, to allow a writ, that they are made responsible. The allowance of a writ in vacation is not a judicial act. . . . . The habeas corpus act does not, then, in any of its provisions, violate, or even touch, the principle, that no suit lies for a judicial act." Platt, Senator, in the leading and prevailing opinion in the Court of Errors (9 Johns. 425), in the same celebrated case, distinctly affirms these views of Ch.J. Kent, and says: "I consider this section [giving a penalty] as having no application to the chancellor, or judges, in their judicial character. This penalty applies only to magistrates and others who act *ministerially* as conservators of the peace." After referring to cases which must necessarily arise, if the principle be recognized and sanctioned that judges are liable for acts done judicially, he adds: "These absurd consequences evince that, *as Courts*, they were never intended to be made responsible to the party in a private suit. Consider them liable in

their ministerial capacity only, and the construction of this statute accords with the established and revered principles of the common law." Beardsley, J., in Wilson v. The Mayor, &c. (ubi supra), clearly points out the distinction between ministerial and judicial duties, and the complete immunity secured in the discharge of the latter class, and the liability incurred in the former. He says : " Where that is absolute, certain, and imperative, and every mere ministerial duty is so, the delinquent officer is bound to make full redress to every person who has suffered by such delinquency. Duties which are purely ministerial in their nature are sometimes cast upon officers whose chief functions are judicial. Where this occurs, and the ministerial duty is violated, the officer, although, for most purposes, a judge, is still civilly responsible for such misconduct. But where the duty alleged to have been violated is purely judicial, a different rule prevails ; for no action lies in any case for misconduct or delinquency, however gross, in the performance of judicial duties. And although the officer may not in strictness be a judge, still, if his powers are discretionary, to be executed or withheld according to his own view of what is necessary and proper, they are in their nature judicial, and he is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed." We have here a clear, concise, and intelligible definition of ministerial and judicial duties. Applying these principles and authorities to the case at bar, we arrive at the following results :

1. That for refusal to issue the writ, the officer or members of the Court, authorized by law to entertain the application for it, is or are liable to an action for such refusal.

2. That the duty to issue the writ is absolute, certain, and imperative.

3. That the act is not discretionary, to be executed or withheld, according to the view of the officer of what is necessary and proper.

It follows, as a corollary from these propositions, that the act of issuing this writ is purely ministerial, and in no sense judicial ; and as a consequence, it follows that the Act of 1850, conferring

upon the City Judge all the judicial powers then possessed by the Recorder, did not vest in the City Judge any other than the judicial powers of the Recorder; and that if this officer possessed the ministerial power to issue the writ of habeas corpus, it did not, by the terms of this act, transfer that power to the City Judge.

The judgment appealed from must be affirmed.

SCRUGHAM, J.—Appeal from a judgment of the Supreme Court rendered at General Term in the First District. Louisa Nash was arrested and committed by a police justice of the city of New York, on a charge of larceny. The City Judge of the city of New York allowed a writ of habeas corpus, upon which she was discharged on the ground that the commitment was defective on its face. The General Term of the Supreme Court, in the First District, reversed this decision on certiorari, on the ground that the City Judge of the city of New York had no jurisdiction in habeas corpus proceedings. From the judgment entered on this decision the present appeal is taken.

The office of City Judge of the city and county of New York was created by statute on the 8th of April, 1850, and the powers conferred upon the new officer are specified as follows: "All judicial powers vested by law in the Recorder of the city of New York are hereby conferred upon such City Judge, and said City Judge shall concurrently with said Recorder perform and discharge all judicial duties imposed upon such Recorder." The powers thus conferred are only such as the Recorder possessed at the passage of this act, and if he had not then the power to issue writs of habeas corpus at chambers, the City Judge created by the act would not acquire it; and unless we find that the Recorder possessed the power, it will not be necessary to determine whether, in exercising it, he acted judicially or ministerially. It was not a power which belonged to the office of Recorder per se, but the right to exercise it was conferred upon him by the Act of 1801, " to prevent unjust imprisonment by securing the benefit of the writ of habeas corpus," and the act of the same date entitled, " an Act concerning the Supreme Court." These

statutes came within the provisions of revised acts of similar titles passed at the thirty-sixth session of the legislature, in 1813, and were repealed by the General Repealing Act passed April 13, 1813, and entitled "an Act to repeal the acts and parts of acts therein mentioned." And these two revised Acts of 1813 were, on the revision of the statutes in 1828, themselves repealed by the General Repealing Act, passed December 10, 1828. These repeals left the Recorder of New York without any power or authority to issue writs of habeas corpus at chambers, except such as was conferred upon him in common with Recorders of other cities, by section 32, of title 2, chapter 3, part 3, of the Revised Statutes (first edition), which declares that every such Recorder shall, by virtue of his office, be a Supreme Court Commissioner. The power belonged to that office, and it was only in that character that the Recorder could exercise it. The Statute was not an act enlarging the powers of the office of Recorder; it did not provide that the Recorder of a city should have the same powers that were possessed by Supreme Court commissioners, but that the officer, the incumbent of the office, should, by virtue of it, be a Supreme Court commissioner. This he could not be after that office was abolished, as it was by the constitution on the first Monday of July, 1847; and unless, after the adoption of the constitution, the powers pertaining to it were, by statute, continued in or bestowed upon Recorders of cities, they cannot be exercised by them. They were not saved to the Recorder by the twelfth section of article XIV. of the constitution, for the powers and jurisdictions to which that section applies are those of courts and not of the officers who hold them. It was held in Renard v. Hargous (3 Kernan, 259), that the powers which the judges of the Superior Court exercised as ex-officio Supreme Court commissioners were continued to them by the seventh section of the Act of May 12, 1847, providing for their election, which declares that "the justices of the Superior Court, whose election is provided for by this act, shall have and possess the same powers, and perform the same duties, as the justices of that court now have and possess and perform." It will be per-

ceived that this act continues in the officers (justices of the Court) the powers they possessed, while the section of the constitution just referred to continues in the *Court* its powers and jurisdiction; and it was upon the provisions of the Act of 1847, and not upon those of this section of the constitution, that this Court determined that the justices of the Superior Court had authority to issue attachments against absconding, concealed, or non-resident debtors. As no similar statute was enacted in relation to Recorders, and as the authority which they possessed as ex-officio Supreme Court commissioners, and by virtue of which alone they were empowered to issue writs of habeas corpus at chambers, was determined by the constitutional abolition of that office on the first Monday of July, 1847, no authority to issue such writs devolved upon the City Judge, for no power was conferred upon that officer by the Act of eighth of April, 1850, creating his office, other than such as was then vested in the Recorder of the city of New York.

The judgment should be affirmed.

Affirmed.

JOEL TIFFANY,
State Reporter.