# 𝔠𝔞𝔰𝔢𝔰

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## 𝔒𝔠𝔱𝔬𝔟𝔢𝔯, 1876.

---

## EDWARD LANGE, RESPONDENT, v. CHARLES L. BENEDICT, APPELLANT.

*Unlawful imprisonment — action for, against judge — when not maintainable, although sentence is unauthorized.*

The plaintiff was convicted of a crime punishable by fine OR imprisonment. The United States District Court, over which the defendant presided as judge, imposed both. The plaintiff paid the fine and applied to be released, because he had suffered one of the alternative punishments provided for the offense. The application was denied and the court directed the sentence pronounced to be vacated, and then sentenced the plaintiff to one year's imprisonment under his conviction (authority to so change the punishment having been previously held by the Supreme Court of the United States to exist). On return to a writ of *habeas corpus* and a writ of *certiorari* issued by the United States Supreme Court, the plaintiff was discharged from custody, the court holding that·he could not lawfully be sentenced to imprisonment after what had transpired in the case. The plaintiff thereupon brought this action for unlawful imprisonment. *Held,* that it could not be maintained.

Where, in the course of a judicial proceeding, a judge is required to pass upon a question, the law as to which is in such a condition as to afford ostensible support to each side of the proposition presented, so that different minds might well, and naturally would, be lead to different conclusions as to the proper course to be pursued in disposing of the case, a judge cannot be held personally liable for a decision made by him in good faith, and without malice, even though an appellate court should subsequently reverse such decision, and hold that the judge had no power to render or enforce the same.

Especially is the judge exempt from personal liability, when his action is founded

upon a decision of an appellate tribunal to which he is bound to conform, affirming the existence of the authority exercised by him in passing the sentence in question.

APPEAL from an order overruling a demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action.

*B. F. Tracy*, for the appellant.

*Wm. Henry Arnoux*, for the respondent.

DANIELS, J.:

The action has been brought to recover for the unlawful imprisonment of the plaintiff by the defendant, who is the United States district judge for the eastern district of New York. It appears by the complaint and the copies of the papers annexed to it, showing the proceedings had, that the plaintiff was indicted, tried and convicted at a term of the Circuit Court of the United States for the southern district of New York, held by the defendant, of the crime of larceny, committed by stealing mail bags of the value of less than twenty dollars. By the act of Congress defining the offense and its punishment, that conviction rendered the plaintiff liable to be sentenced to pay a fine not exceeding $200, or, to be imprisoned not exceeding one year. In finally disposing of the case the defendant imposed both these punishments upon him. The plaintiff paid the fine, and applied to be released from custody by means of the writ of *habeas corpus* because he had suffered one of the alternative punishments provided for the offense. That was denied, and the court, by order entered, directed the sentence which had been pronounced to be vacated, and then sentenced the plaintiff to one year's imprisonment upon his conviction. He had then been in custody five days, and afterward applied to the Circuit Court of the United States, when the circuit judge, LEWIS B. WOODRUFF, the district judge of the southern district, SAMUEL BLATCHFORD, and the defendant, were upon the bench presiding, for a writ of *habeas corpus*, to discharge him from further imprisonment because of its illegality. The application was heard, and after being considered, was denied. He then applied for another writ of *habeas corpus* which, together

with a writ of *certiorari*, was issued by the Supreme Court of the United States. And upon the hearing had on the return made to both writs, the plaintiff was discharged from custody, the court holding that he could not lawfully be again sentenced to imprisonment after what had transpired in the case. (*Ex parte Lange*, 18 Wall., 163.) After that, this action was brought against the defendant for false imprisonment; and a very able argument has been made by the learned counsel for the plaintiff in favor of maintaining it. But the report of the case itself, as it was considered and decided by the Supreme Court of the United States, would seem to be sufficient to negative the assertion that such an action can be maintained upon the facts in the case. The sentence was changed by the same court, at the same term, during which the first sentence was pronounced. And a learned and extended examination by the court of last resort was found necessary, for the purpose of maintaining the position that the change was improperly and unlawfully made. The opinion in which that view was sustained (and it was done by one of the ablest judges of the present time), proved unsatisfactory and unconvincing to two members of that learned court; and its conclusions were combatted by one of those two in an opinion rarely, if ever, excelled in the thoroughness of its investigations and researches, or the vigorous logic used in tracing and exhibiting their results. Under these circumstances, it cannot, with the least propriety, be held that the point presented to and decided by the defendant was not a doubtful one, or that its decision and determination did not require the exercise of judicial functions. The examination and discussion which it received when it was finally decided most conclusively establishes the contrary; and that, of itself, should be deemed to be sufficient to shield the defendant from personal liability. The law was, to say the least, in such a condition as to afford ostensible support to each side of the proposition presented, and to render the development of a satisfactory and consistent conclusion intricate and difficult. Different minds could very well, and would very naturally, be led to different results concerning the propriety of the course pursued in the disposition of the case by the Circuit Court. Two other judges of great learning and experience in that court held, with the defendant, that the proceedings were not invalid, and the plausibility of their decision was

finally corroborated by the opinion of Mr. Justice Clifford. If, with that weight of authority in support of the action that was taken, a judge could be held personally liable for its consequences, judicial protection would be at once destroyed, and the utility of the courts in doubtful cases practically subverted. For the result would finally be that all unauthorized determinations arising out of misapprehensions of the law, or miscalculations of the true weight of authority affecting the person, or the property of the defeated party, would furnish a cause of action for trespass or false imprisonment; and no court could possibly be protected against such liability, for even those of last resort not unfrequently find it necessary to re-examine, distinguish, and finally overrule their own decisions. And it certainly is no discredit to the learned tribunal, by whose mandate the plaintiff was set at liberty, to say that it has not always found itself at liberty to disregard that alternative. The law is the most complicated of all practical sciences, and it cannot fail to become more so, as the intricacies of business and enterprise increase and advance. Differences of opinion upon legal subjects cannot be avoided even by the most patient attention and laborious investigation; and when they do arise, erroneous conclusions are required to be excused as the natural consequences of human fallibility. When a party has been brought before a court of justice in a legal manner, and circumstances are presented requiring a decision affecting him to be made, the tribunal making it cannot be deprived of protection, because it may afterwards, upon further and fuller investigation, turn out to have been erroneous. That was the case of the plaintiff. He had been convicted of a crime punishable by fine or imprisonment. The court inadvertently imposed both. When its consideration was directed to the misapprehension under which the sentence had been pronounced, an effort was made to correct it in such a manner as to comport with what was considered to be just in the case. And that correction, it was held, could be and was designed to be made. The emergency which had arisen required a decision concluding the power of the court. The judge could neither avoid making it nor escape from it. His duty required him to act, and he had the power to decide, and did so accordingly, to the best of his judgment. And for that he cannot, upon any sound principle of accountability, be held to be personally liable. He had for that purpose, jurisdiction of the per-

son and the subject-matter. Both were before him, and his decision was necessary. He could not avoid making it if he would. And as it turned out he decided erroneously. The rule by which judicial officers have been exonerated from liability for the consequences of their decisions, has gone much farther than is required under the circumstances for the protection of the defendant. In *Yates* v. *Lansing* (5 Johns., 282), the assertion was approvingly mentioned, "that no authority, or semblance of an authority, had been urged for an action against a judge of record, for doing any thing as judge; that this was never before imagined, and no action would lie against a judge for a wrongful commitment, any more than for an erroneous judgment." (Id., 294.) And that principle was affirmed afterwards in the same case by the Court of Errors. (9 id., 396.) And to the same effect are *Jenkins* v. *Waldron* (11 id., 114); *Vanderheyden* v. *Young* (id., 150); *Wilson* v. *Mayor of New York* (1 Denio, 595); *Weaver* v. *Devendorf* (3 id., 117); *Bradley* v. *Fisher* (13 Wallace, 335). In the case of *The Rochester White Lead Co.* v. *City of Rochester* (3 Com., 464), it was said that, "whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depend upon his own judgment, he is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed." (Id., 466.) To secure this immunity, it is sufficient that a case requiring judicial action is presented to the judge. (*Harman* v. *Brotherson*, 1 Denio, 537; *Landt* v. *Hilts*, 19 Barb., 283.) But the defendant's right to exemption from personal liability in this case, rests upon still more cogent circumstances than those already relied upon. For the decisions of the United States Supreme Court, to which he was bound to subordinate his action, had previously affirmed the existence of the authority which he exercised in changing the punishment. (*Cheang-Kee* v. *U. S.*, 3 Wallace, 321; *Basset* v. *U. S.*, 9 id., 38.) In the last case the person proceeded against had pleaded guilty to an indictment, and had been sentenced to imprisonment and was actually sent to prison in pursuance of the sentence. A few days after that he was brought again into court by means of a writ of *habeas corpus*, and on the district attorney's motion the judgment was set aside, and the prisoner had leave to withdraw his former plea of guilty. This was all done during the same term, as it was

in the case of the plaintiff, and the court unanimously held it to be proper. It was not held so because the proceeding was favorable to the defendant, but for the sole reason that during the same term the court had full power to control and change its judgments. And that subject was very fully discussed, and the authorities cited upon which the principle rested, by Mr. Justice CLIFFORD in his opinion in *Ex Parte Lange* (18 Wallace, 191–195). And a decision of the same nature was made after the execution of the sentence had commenced, by reducing the term for which transportation had been provided, in the case of *Rex* v. *Price* (6 East, 323, 327). The Circuit Court had no power, even if it had the disposition, to gainsay or deny the accuracy of the legal principle sanctioned by the case of *Bassett* v. *U. S. (supra)*. It not only had the power, but it was bound to conform its action to the principle maintained by that authority. That was as obligatory upon the defendant at the time as positive legislation would have been. And he appears to have acted under its sanction. At that time his action was strictly lawful, and it cannot be denied that the authority of that case then afforded him complete protection for the change made in the sentence, and it would probably be conceded to continue to do so, had it not been since impaired as authority by the final decision made for the plaintiff's liberation. Under the doctrine of that case the defendant was vested with clear jurisdiction over the subject-matter brought before him, and it at the same time indicated the manner in which it should be exercised by him. That it was, as the learned justice stated in his opinion in the plaintiff's favor, it had been decided "in general terms, without much consideration" (18 Wallace, 167), could not change its effect as authority at the time when it was followed by the Circuit Court. The defendant presiding there could not then, with the least propriety, have assigned that as a reason for disregarding it as authority. The decision was then in full force as it had been made. It was promulgated by the court in its published reports as a proper exposition of the law, and it would be exceedingly unjust under such circumstances, to render the defendant's protection dependent upon the views afterwards taken to correct it by the court that had pronounced it. That tribunal could correct it, as it has, when it was discovered to be wrong, but he had no such power over it. It was his duty to conform his official action to it, and for that it

cannot be that he can be held personally liable, because the authority of the decision has since been superseded by another. His conduct, on the other hand, should be so far sustained as to secure him immunity, the same as it would have been if a statute had existed in favor of it, which the legislature afterwards repealed. For future purposes the repeal obliterates the law, the same as though it had never been enacted. But acts previously performed are afterwards maintained by force of the law which sanctioned them, at the time of their occurrence. This principle is too familiar to require the citation of authorities for its support, and all its reasons are applicable to the case now before this court. The principle invoked for the support of this action would sanction suits against judges for their official acts in a large class of cases, if it should receive the approval of the courts. It would be difficult to exclude from its comprehension any cases where imprisonment should be pronounced or continued, which might afterwards be declared to be unwarranted by the final view taken of the law. No authority has gone so far as that, and it is not probable that any will be hereafter so widely extended. The settled principle on the contrary is, "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence, without which no judiciary can be either respected or useful." (*Bradley* v. *Fisher, supra,* 347.) The defendant cannot be held liable for the consequences of the imprisonment following the change made in the sentence. He acted judicially in making it. The exigency required him to decide, and that included the power to decide wrong without liability to himself, particularly as it practically required the abrogation of an existing, and, for the time, controlling authority, to render the error apparent. It is entirely evident that he was actuated solely by the motive of performing his duties for the best interests of the public, by subjecting the plaintiff to what was believed to be no more than a proper measure of punishment, for the offense of which he had been convicted. That he considered his acts to be fully

warranted by the decision of the tribunal from which he was bound to receive the law, is clearly shown by what the case shows to have transpired, and in that view he was supported by other eminent judges. To hold him liable for a change afterward made in it, would seem to be hardly less than a positive perversion of justice. That he cannot be held liable for the five days' imprisonment under the sentence, as it was at first pronounced, follows from the view which was adopted in the decision of the *habeas corpus.* For it was then distinctly held, that " the judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offense, on a valid verdict. That error of the court, in imposing the two punishments mentioned in the statute when it had only the alternative of one of them, did not make the judgment wholly void." (*Ex parte Lange,* 18 Wall., 174.) And as the defendant had the same jurisdiction over the subject when the plaintiff's first sentence was vacated, and the last one was pronounced, he is equally entitled to the same protection as to this portion of the case. The sentence, under the circumstances, was not void. It was simply voidable by the operation of the restriction subsequently imposed upon the principle established by the case of *Basset* v. *United States* (*supra*), and that effect was first given to it long after the power of the defendant's court had been exhausted. The order should be reversed, and an order entered sustaining the demurrer, with the usual leave to the plaintiff to amend, on payment of costs.

Brady, J., concurred. Davis, P. J., taking no part.

Order reversed, and order entered sustaining demurrer, with usual leave to plaintiff to amend on payment of costs.